## MATTER OF REPUYAN

In Visa Petition Proceedings

A-22783148

A-22783147

*Decided by Board July 10, 1984*

A reading of the plain language and legislative history of section 101(b)(1)(E) of the Immigration and Nationality Act, 8 U.S.C. § 1101(b)(1)(E) (1982), establishes that Congress intended that the 2-year residence requirement vis-a-vis an adopted child connote a familial relationship not inherent in a mere visit; therefore, a petitioner fails to meet his burden of proof in visa petition proceedings by merely showing a succession of visits by the adopting parent in the home of the adopted child.

ON BEHALF OF PETITIONER: Pro se

BY: Milhollan, Chairman; Maniatis, Dunne, Morris, and Vacca, Board Members

In a decision dated May 20, 1983, the acting officer in charge denied the visa petitions filed by the petitioner on behalf of the beneficiaries as her children under the provisions of section 201(b) of the Immigration and Nationality Act, 8 U.S.C. § 1151(b) (1982). The petitioner has appealed from that decision. The appeal will be dismissed.

The petitioner is a 67-year-old citizen of the United States. The beneficiaries are natives and citizens of the Philippines, aged 14 and 17. The evidence submitted with the petitions consisted of the birth certificates of the beneficiaries, adoption decrees, and adoption records. The documents indicate that the petitioner adopted the beneficiaries in the Philippines on March 10, 1981.

The adoption decrees further reflect that the natural parents of the beneficiaries are still alive and that the petitioner was the aunt of the beneficiaries.[1] The decrees indicate that the petitioner has

---

[1] The beneficiaries are not siblings and appear to be first cousins.

visited the beneficiaries in the Philippines for various lengths of time. The decree granting adoption of Myrna Repuyan states that the petitioner stayed with her at least five times for a total period of over 2 years. The decree relating to the adoption of Roberto Repuyan indicates that the petitioner stayed with him seven times for 7 months at a time.[2] It is not clear if the petitioner visited the beneficiaries in their family homes during these periods.

The record also indicates two other periods of time that the petitioner visited the beneficiaries. At the oral interview conducted at the time of the filing of the petitions, the petitioner indicated that she had visited the beneficiaries for approximately 6 months since 1979. The acting officer in charge denied the visa petitions because of this information. He concluded that the petitioner had failed to comply with the 2-year residence requirement. On appeal, the petitioner states that she has been present in the Philippines with the beneficiaries for a total of 27 months. These 27 months cover a total of seven visits of various durations over a 16-year time span. Details have not been submitted regarding the circumstances of either of these additional periods of visit. Upon review of the record, we find that the petitioner has not demonstrated compliance with the 2-year residence requirement and will dismiss the appeal.

In visa petition proceedings, the burden is upon the petitioner to establish that the requisite familial relationship exists in conformity with the statute. *See Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966). In order to prove that the beneficiaries are entitled to immediate relative status, the petitioner must show that they qualify as her children within the meaning of the Act. *See* section 201(b) of the Act. The applicable section of the statute in this case is section 101(b)(1) of the Act, 8 U.S.C. § 1101(b)(1) (1982), and its pertinent subsection (E), which provides as follows:

The term "child" means an unmarried person under twenty-one years of age who is—

(E) a child adopted while under the age of sixteen years if the child has thereafter been in the legal custody of, *and has resided with, the adopting parent or parents for at least two years.* . . . (Emphasis added.)

It has been determined that the 2-year residence requirement may be satisfied either before or after the adoption. *See Matter of M–*, 8 I&N Dec. 118 (BIA 1958; A.G. 1959).

We would initially note that the language of the statute requires that the child reside with the adopting parent. This requirement implies that the child resides in a home established by the adopt-

---

[2] The petitioner does not submit that this last statement is correct.

ing parent. Secondly, we note that "residence" is defined in section 101(a)(33) of the Act in the following manner:

The term "residence" means the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent.

This definition is similar to that found in the Oxford Universal Dictionary which defines "residence" as "the circumstance or fact of having one's permanent or usual abode in or at a certain place." We would conclude from the language of the statute that mere periodic visits by an adopting parent in the home of the child do not satisfy the residence requirement of section 101(b)(1)(E) of the Act. Under such circumstances, the child has not "resided with" the adopting parent but rather the parent has visited the child. Moreover, we would not find that such visits equate to residence. The requirement of residence with the parents connotes a familial relationship not inherent in a mere visit. We have never required that residence be continuous; however, we do conclude that residence of a child with an adoptive parent entails more than a succession of visits by the adopting parent in the home of the child.

The petitioner has not produced any evidence from which we can conclude anything more has occurred than such periodic visits. It appears that the petitioner's residence was in the United States and not the Philippines because the record reflects that the petitioner has resided with her husband in Junction City, Kansas, from 1949 to the present. It is clear from the record that the beneficiaries never resided with the petitioner in the United States. In addition, the composition of the households during the visits in the Philippines has not been established. These circumstances raise doubts which have not been satisfied as to whether the beneficiaries "resided" with the petitioner for 2 years.

While it is true that there is an underlying principle of family unification in the immigration laws, there is at the same time specific direction as to what relationships are to be recognized for immigration benefits. The definition of adopted child in the Act requires both legal custody and 2-year residence.

The following legislative history of section 101(b)(1) of the Act lends further support for our conclusion that mere periodic visits do not satisfy the residence requirement. This history indicates congressional awareness of the potential for abuse of including adoptees within the definition of "child" under the Act.

Adoptees were not included as children in the 1952 revision of the immigration laws, despite a recommendation to do so by the

121

Senate Judiciary Committee.[3] This committee urged that a person who was adopted in the United States prior to attaining the age of 16 and who had been in the legal custody of the adopting parents should be considered a "child" for immigration purposes. The committee noted the necessity of providing these safeguards so as to prevent fraudulent adoptions which were entered into solely to confer immediate relative or preference status. Congress, however, declined in 1952 to bring adoptees within the definition of "child" in section 101(b) and this preclusion was recognized by this Board. *See Matter of B-*, 6 I&N Dec. 161 (BIA 1954); *Matter of S-*, 5 I&N Dec. 289 (BIA 1953).

In 1957, the Immigration and Nationality Act of 1952 was amended and certain adoptees were brought within the definition of "child." [4] The House Report recommended that the statute should include as "children" a carefully defined class of adoptees.[5] The desire to preclude ad hoc adoptees from gaining immigration benefits is found in the technical analysis of an administration sponsored predecessor bill, S. 1006, contained in a statement by the Attorney General prepared for delivery before the Subcommittee on Immigration of the Senate Judiciary Committee on July 30, 1957. This analysis pointed out that section 23 of the proposed bill would extend the definition of "child" to include adopted children under limited circumstances. A person adopted while under the age of 12 who had lived with his adoptive parents for at least 2 years prior to the visa application might be considered a "child" under the immigration laws. It was specifically pointed out that a proposal of this type would prevent abuse through ad hoc adoptions made only for the purpose of circumventing the immigration laws. *See Matter of M-*, *supra*. Subsection (E) as quoted above, with amendments, was added to section 101(b)(1) of the Act.

Since 1957 this Board has carefully viewed the bona fides of adoption cases with an awareness for the potential for abuse. Specific aspects which have been considered include those in which the adoptee was adopted in absentia while remaining with the natural parents, *see Matter of Yuen*, 14 I&N Dec. 71 (BIA 1972), and instances in which there is a blood relationship between the adopting parent and the adoptee, with the natural parent of the adoptee still living, *see Matter of Tang*, 14 I&N Dec. 180 (BIA 1972); *see also Moge* v. *Morris*, 470 F. Supp. 556 (E.D. Pa. 1979). These cases indi-

---

[3] S. Rep. No. 1515, 81st Cong., 2d Sess. 468 (1950).

[4] Act of September 11, 1957, Pub. L. No. 85-316, § 2, 1957 U.S. Code Cong. & Ad. News (71 Stat.) 639.

[5] H.R. Rep. No. 1199, 85th Cong., 1st Sess. 4, *reprinted in* 1957 U.S. Code Cong. & Ad. News 2016, 2017.

cate that when interpreting the requirements of the statute, we are mindful of the reasons that they were enacted. These requirements cannot be interpreted in such a way as to defeat the congressional purpose. Based on what we find to be the plain meaning of the statute and its legislative history, we conclude that the residence requirement of section 101(b)(1)(E) of the Act is not met by a succession of visits by an adopting parent in the home of the adopted child. Consequently, the appeal is dismissed.

**ORDER:** The appeal is dismissed.