# MATTER OF CUELLO

## In Visa Petition Proceedings

### A-27264727
### A-27264728

### Decided by Board July 25, 1989

(1) Where an adoption has been effected, be it intrafamily or otherwise, and the adopted child continues to reside in the same household with the natural parent or parents during the period in which the adoptive parent seeks to establish his or her compliance with the statutory residence requirement of section 101(b)(1)(E) of the Immigration and Nationality Act, 8 U.S.C. § 1101(b)(1)(E) (1982), the petitioner has the burden of establishing that the adoptive parent exercised primary parental control during that period of residence.

(2) Evidence of parental control may take many forms, including competent objective evidence that the adoptive parent owns or maintains the property where the child resides, provides financial support and day-to-day care, and assumes responsibility for important decisions in the child's life.

(3) The evidence must clearly establish the physical living arrangements of the adopted child, adoptive parents, and the child's natural parents during the period of time in which the adoptive parent seeks to establish compliance with the residence requirement of the statute and, where a fraudulent or ad hoc adoption is suspected, during any period following the adoption which the adjudicating officer deems appropriate.

(4) Where a petitioner establishes compliance with the statutory requirements of section 101(b)(1)(E) of the Act, demonstrating, where necessary, primary parental control during the parties' residence with one another, the relationship will be presumed bona fide in the absence of evidence indicating otherwise. *Matter of Yuen*, 14 I&N Dec. 71 (BIA 1972); and *Matter of Tang*, 14 I&N Dec. 180 (BIA 1972), distinguished.

ON BEHALF OF PETITIONER: Pro se

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

In a decision dated June 9, 1986, the acting officer in charge denied the visa petitions filed by the petitioner to accord the beneficiaries immediate relative status as his adopted children under section 201(b) of the Immigration and Nationality Act, 8 U.S.C. § 1151(b) (1982). The petitioner appealed from that decision. The record will be remanded for further proceedings before the officer in charge.

The petitioner, a 54-year-old native of the Philippines and citizen of the United States, adopted the beneficiaries, natives and citizens of the

Philippines, on April 21, 1976, when they were 2 1/2 and 6 1/2 years old. The beneficiaries' surname was changed to that of the petitioner at the time of the adoption. The petitioner filed his visa petitions on the beneficiaries' behalf on April 14, 1986, when they were 12 and 16 years of age.

The record reflects that the beneficiaries are the natural children of the petitioner's sister. The record further reflects that the petitioner retired from the United States Navy, after 22 years of service, on September 4, 1974, after which he returned to the Philippines and resided with the beneficiaries for almost 2 years. In May 1976, 1 month after he adopted the beneficiaries, the petitioner returned to the United States in order to work to supplement his income and to avail himself of G.I. benefits by attending school at South Western College and the San Diego University. He returned to the Philippines in 1981 and has since resided with the beneficiaries in his home in Cavite City, Philippines.

Notes from an Immigration and Naturalization Service interview with the petitioner reflect that the beneficiaries' natural father disappeared in 1977 and his present whereabouts are unknown, that the beneficiaries' natural mother resides in the petitioner's home with him and the children, that the beneficiaries' birth records were amended subsequent to the adoption to reflect the petitioner as father, that the petitioner supports the beneficiaries, and that the children address him as "father" or "uncle." The notes further reflect that the petitioner did not claim the children as his dependents on his income tax returns or as beneficiaries of his navy retirement benfits, and that he had not signed the children's report cards.

At the time the acting officer in charge entered his decision in this case, section 101(b)(1)(E) of the Act, 8 U.S.C. § 1101(b)(1)(E) (1982), included within the definition of the term "child," "a child adopted while under the age of sixteen years if the child has thereafter been in the legal custody of, and has resided with, the adopting parent or parents for at least 2 years."

In his June 9, 1986, decision denying the visa petitions, the acting officer in charge cited *Matter of Yuen*, 14 I&N Dec. 71 (BIA 1972), and *Matter of Tang*, 14 I&N Dec. 180 (BIA 1972), for the proposition that a true parental relationship must be created by an adoption and that the adoption of blood relatives casts doubt as to the bona fides of the adoption. The acting officer in charge concluded that a true parental relationship had not been created by the instant adoptions and that the bona fides of the adoptions had thus not been established. The acting officer in charge based his conclusion on the following evidence of record: (1) the beneficiaries are the nephews of the petitioner; (2) the beneficiaries' natural mother resided in the petition-

er's home with the beneficiaries while the petitioner allegedly raised the beneficiaries; (3) there was no change in the natural mother's relationship with the beneficiaries following the adoption; (4) the beneficiaries continued to use their natural parents' surname in school after the adoption; (5) the beneficiaries' birth registrations were not amended until shortly before the visa petitions were filed on their behalf; (6) the beneficiaries were not claimed as dependents on the petitioner's income tax returns or naval retirement records, nor was the petitioner named as father of the beneficiaries on their school records; and (7) the petitioner left the Philippines 1 month after he adopted the beneficiaries.

In his brief on appeal, the petitioner states that the notes of his interview with the Service misconstrue the relationship and living pattern between himself, the beneficiaries, and their natural mother. He explains that the beneficiaries' natural mother only lived with them occasionally, particularly when the children were sick, that he did not claim the children as dependents on his income tax returns due to his belief that such dependents had to be residents and citizens of the United States, that the children have dependent identification cards from the United States Armed Forces and are the designated beneficiaries of his naval retirement benefits and his life insurance policies, and that the children did not use his surname at school because they did not have their amended birth certificates to present to the school due to an administrative foul-up after the adoption. He also stated that he waited to file the visa petitions on the beneficiaries' behalf because he wanted his older son to finish his schooling at an academy in the Philippines before going to the United States.

We note at the outset that the acting officer in charge denied the visa petitions without first giving the petitioner notice of the proposed basis for the denial or affording him an opportunity to rebut or explain the questions the acting officer in charge raised with regard to the bona fides of the adoption. This Board recently held that where a petitioner was not put on notice of a deficiency of proof and given a reasonable opportunity to address the deficiency before the denial of a visa petition, and the petitioner proffers additional evidence addressing the deficiency on appeal, the Board will ordinarily remand the record to allow the adjudicating officer to consider and address the new evidence. *Matter of Soriano*, 19 I&N Dec. 764 (BIA 1988); *see also* 8 C.F.R. § 103.2(b)(2) (1988). We find that our holding in *Matter of Soriano* mandates a remand in this case.

We note, moreover, that the cases cited by the acting officer in charge, *Matter of Yuen, supra,* and *Matter of Tang, supra,* are distinguishable from the instant case. *Matter of Yuen* was a factually unique case, involving an adoption created after the Civil Code of

China was suspended in 1950 by the Communist Chinese Government which had seized control of mainland China. Inasmuch as the Communist government promulgated no specific procedural or substantive requirements for creating an adoption to replace the Civil Code, the Board was forced in *Yuen* to look to de facto criteria to determine whether an adoption was in fact effected. *See generally Matter of Chu,* 19 I&N Dec. 81 (BIA 1984).

In *Matter of Yuen, supra,* the petitioner, a blood uncle of the beneficiary, allegedly adopted the beneficiary in absentia in 1956, when the beneficiary was 6 ·1/2 years old. No written adoption agreement was ever produced, and the only evidence of the adoption was an uncorroborated affidavit of the petitioner. The case was decided on a number of grounds, including the fact that the beneficiary did not actually enter the family or household of the petitioner until 1968, after the beneficiary had reached the age of 14 years, the age limit for creating an adoption prescribed at that time by section 101(b)(1)(E) of the Act. We concluded that a "true parental relationship" had not been created prior to the statutory age limit for effecting adoptions. The Board also stated that the bona fides of the adoptive relationship were in doubt because of the blood relationship between the petitioner and the beneficiary and the absence of a written agreement of adoption. *Id.*

*Matter of Tang, supra,* dealt with a pre-1950 Chinese adoption in which the authenticity of the written instrument of adoption, which was required by Article 1079 of the Civil Code of China, was not established by any credible evidence. Thus, the Board disposed of the case on the ground that there was insufficient evidence to demonstrate that a legally valid adoption had been effected. Although the Board went on in *Tang* to discuss the bona fides of the adoption, that discussion was dicta.

Although we do not consider *Matter of Yuen* and *Matter of Tang* to be controlling in the instant case, we find that an inquiry into the nature of the relationship between the adopted child and adoptive parents, as compared with the relationship between the child and his or her natural parents, is appropriate in determining whether the residence requirement of section 101(b)(1)(E) of the Act has been satisfied.

Where an adoption has been effected, be it intrafamily or otherwise, and the adopted child continues to reside in the same household with the natural parent or parents during the period in which the adoptive parent seeks to establish his or her compliance with the statutory residence requirement of section 101(b)(1)(E) of the Act, the petitioner has the burden of establishing that the adoptive parent exercised primary parental control during that period of residence. Evidence of

parental control may take many forms, including but not limited to, competent objective evidence that the adoptive parent owns or maintains the property where the child resides, provides financial support and day-to-day care, and assumes responsibility for important decisions in the child's life. The evidence must clearly establish the physical living arrangements of the adopted child, adoptive parents, and the child's natural parents during the period of time in which the adoptive parent seeks to establish compliance with the residence requirement of the statute and, where a fraudulent or ad hoc adoption is suspected, during any period following the adoption which the adjudicating officer deems appropriate. Documentary evidence and detailed, nonconclusory affidavits may be submitted in support of the petitioner's claim of primary parental control.[1]

In the instant case, the continuing presence or influence of the natural mother in the adopted children's life necessitates inquiry into the nature of the parties' residence with one another. We note that where a petitioner establishes compliance with the age and legal custody requirements of section 101(b)(1)(E) of the Act, and the statute's residence requirement by, where necessary, demonstrating primary parental control during the parties' residence with one another, the relationship will be presumed bona fide in the absence of evidence indicating otherwise. *See generally Matter of Repuyan*, 19 I&N Dec. 119 (BIA 1984).

The record will be remanded to the officer in charge for reconsideration of his decision in light of the foregoing discussion. On remand, the petitioner should be granted an opportunity to submit objective evidence to substantiate the explanations proffered on appeal and to offer whatever additional evidence he may wish to present in support of his visa petitions. The burden of proof remains with the petitioner on remand to establish eligibility for the benefits sought. *Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966).

**ORDER:** The record is remanded to the district director for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

**FURTHER ORDER:** Should a decision on remand be adverse to the petitioner, an appropriate order shall be entered and the record shall be certified to the Board for review.

---

[1] Service instructions accompanying visa petitions require that affidavits be sworn to by persons who were living at the time, and who have personal knowledge of the event to which they attest. Further, each affidavit must contain the affiant's full name and address, date and place of birth, relationship to the parties, if any, full information concerning the event, and complete details concerning how he or she acquired knowledge of the event.