# MATTER OF MARQUEZ

In Visa Petition Revocation Proceedings

A-27590846

*Decided by Board February 23, 1990*

(1) The Board of Immigration Appeals rejects a strict statutory interpretation of section 101(b)(1)(E) of the Immigration and Nationality Act, 8 U.S.C. § 1101(b)(1)(E) (1982), thereby relying upon the legislative history of the statute which indicates that Congress did not intend to recognize ad hoc adoptions designed to circumvent the immigration laws.

(2) The Board finds the adoptive relationship is more akin to marital relationships than to steprelationships, and thus, in certain cases, the bona fides of adoptions will be determined.

(3) Visa petitions involving the specter of sham adoptions which generally arise in adoptions by a close relative where the relationship between the natural parent and the adopted child does not appear to change subsequent to the adoption will be analyzed under the standards set forth in *Matter of Cuello*, 20 I&N Dec. 94 (BIA 1989).

ON BEHALF OF PETITIONER:
Donald L. Ungar, Esquire
Simmons, Ungar, Helbush,
DiCostanzo & Steinberg
517 Washington Street
San Francisco, California 94111

ON BEHALF OF SERVICE:
Arthur R. George
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

In a decision dated May 31, 1988, the district director revoked his prior approval of the visa petition filed by the petitioner to accord the beneficiary immediate relative status as her adopted daughter under section 201(b) of the Immigration and Nationality Act, 8 U.S.C. § 1151(b) (1982). The petitioner appeals from that decision. The appeal will be dismissed.

The petitioner, a 49-year-old native of the Philippines and citizen of the United States, adopted the beneficiary, a 20-year-old native and citizen of the Philippines, on December 2, 1980, when she was 11 years old. The petitioner filed the visa petition on the beneficiary's behalf on December 28, 1984, when the beneficiary was 15 years old.

The record shows that the beneficiary is the petitioner's niece. The petitioner asserts that she resided with the beneficiary from her birth in 1969 until the petitioner emigrated to the United States in 1975. In support of her visa petition, the petitioner submitted an affidavit of the beneficiary's natural mother, which confirms that the petitioner resided in the home of the beneficiary's natural mother with the beneficiary, whom the petitioner helped support financially. The petitioner also provided a letter dated March 5, 1985, from the manager of the Esteva & Co., Inc., a dollar-peso exchange, listing numerous remittances from the petitioner and her husband payable to the beneficiary's natural mother from 1982 through 1984.

At the time the district director entered his decision in this case, section 101(b)(1)(E) of the Act, 8 U.S.C. § 1101(b)(1)(E) (1982), included within the definition of the term "child," "a child adopted while under the age of sixteen years if the child has thereafter been in the legal custody of, and has resided with, the adoptive parent or parents for at least 2 years."

The visa petition was approved on April 8, 1985. Thereafter, the Service received a memorandum from the American Embassy in the Philippines dated July 7, 1986, which concludes that the petitioner failed to comply with the 2-year residence requirement of section 101(b)(1)(E) of the Act. The memorandum states that the beneficiary was adopted by her aunt, that the petitioner did live in the beneficiary's household prior to her emigration to the United States, but that the beneficiary's natural mother resided in the same household and maintained parental authority.

Based upon that memorandum, the district director advised the petitioner in an undated letter of his intention to revoke approval of the visa petition for failure to meet the residence requirement of section 101(b)(1)(E) of the Act. In his letter, the district director set forth the facts outlined in the Embassy memorandum and granted the petitioner 18 days within which to submit evidence rebutting the stated ground for revocation.

In response to the district director's notice of intention to revoke the visa petition, the beneficiary submitted a letter dated April 27, 1988, from the beneficiary to the district director asking for reconsideration and stating that from the time of her adoption, her natural mother acted only as a guidance counselor, while the petitioner met her physical and financial needs.

In his decision of May 31, 1988, the district director revoked his prior approval of the visa petition on the ground that the petitioner had failed to submit evidence sufficient to overcome the stated basis for revocation.

On appeal, the petitioner through counsel contends that the district

director erred in concluding that she had failed to satisfy the residence requirement of section 101(b)(1)(E) of the Act. The petitioner argues that the parties' undisputed 6-year residence in the same dwelling place prior to her emigration to the United States fulfills that requirement inasmuch as the concept of residence is addressed in the Act only in section 101(a)(33), which defines "residence" as one's "principal dwelling place." The petitioner further argues on appeal that contrary to the district director's view, parental control or authority is an element of legal custody and should not be intertwined with the residence requirement of section 101(b)(1)(E) of the Act. Counsel for the petitioner also points out that in *Palmer v. Reddy*, 622 F.2d 463 (9th Cir. 1980), the United States Court of Appeals for the Ninth Circuit held it improper for the Service, in the context of steprelationships, to require a stepparent to demonstrate "parental interest" when the statute made no explicit reference to such showing. He argues the same should be true for adoptive relationships.

In its brief on appeal, the Service, relying on *Matter of Repuyan*, 19 I&N Dec. 119 (BIA 1984), argues that the petitioner's appeal should be dismissed because the petitioner did not live with the beneficiary in a home established by her and because she has failed to establish that she did not adopt the beneficiary solely to facilitate the beneficiary's entry into the United States.

The petitioner responded to the Service's arguments, arguing that section 101(b)(1)(E) of the Act does not explicitly state that the residence of the adopted child and adoptive parent must occur in a home established by the adoptive parent. Counsel for the petitioner avers that such requirement would impermissibly burden adoptive parents by adding criteria to the statutory definition of an adopted child. Counsel further suggests that the absence of clear statutory language in section 101(b)(1)(E) of the Act requiring that the residence of the parties occur in a home established by the adoptive parent, coupled with the absence of a provision for a de facto familial relationship, indicates congressional intent to recognize all adoptions which comply with the age and legal custody requirements of that section where the adopted child and adoptive parent have shared the same "principal dwelling place" for at least 2 years.

In responding to the Service's argument that the petitioner failed to prove the adoption was not entered into in order to circumvent the immigration laws, counsel relies on *Matter of Cho*, 16 I&N Dec. 188, 190 (BIA 1977), for the proposition that the explicit requirements of section 101(b)(1)(E) of the Act were designed by Congress to prevent sham adoptions, and that their satisfaction should establish for immigration purposes that the adoption is not a sham.

In sum, the petitioner argues for strict statutory interpretation of

section 101(b)(1)(E) of the Act such that all adoptions which satisfy the age and legal custody requirements of the Act where the parties have shared the same principal dwelling place for 2 years would be recognized for immigration purposes. She claims that she has fully satisfied the plain language of section 101(b)(1)(E) of the Act and approval of her visa petition should, therefore, be reinstated.

In assessing the petitioner's arguments, we first note that the legislative history of the bill which provided for section 101(b)(1)(E) of the Act indicates that Congress did not by its definition intend to recognize ad hoc adoptions entered into to circumvent immigration laws. *See* 103 Cong. Rec. 14,659 (1957).[1]

Second, we disagree with the petitioner that section 101(b)(1)(E), and section 101(b)(1)(D) of the Act which provides for the admission of stepchildren, are sufficiently analogous that *Palmer v. Reddy, supra,* should influence how we interpret the language of section 101(b)(1)(E) of the Act. *Palmer* involved steprelationships, which, unlike adoptive relationships, are derivative in nature, arising as a consequence of another relationship, that is, a marriage of a natural parent and a stepparent. Thus, the familial status of children from such a marriage and the concomitant immigration benefit granted by Congress as a result of that status could not in itself involve an attempt to circumvent immigration laws.[2]

In this regard, we find the adoptive relationship more akin to marital relationships than we do to steprelationships because a marriage, like an adoption, may be entered into simply to facilitate entry into the United States. The United States Supreme Court has upheld inquiry into the bona fides of legal marriages despite the absence of statutory language mandating such inquiry. *See, e.g., Lutwak v. United States,* 344 U.S. 604 (1953) (the Court upheld criminal convictions for conspiracy to defraud the United States by obtaining illegal entry into this country of three aliens who had entered into marriages with the defendants for the sole purpose of qualifying them for admission into the United States).

We also find misplaced the petitioner's reliance on *Matter of Cho, supra,* for the proposition that the bona fides of an adoption is established when the parties satisfy the age and legal custody

---

[1] 103 Cong. Rec. 14,659 (1957) shows that Senator Kennedy, one of the principal sponsors of the bill which provided for section 101(b)(1)(E) of the Act, stated that the requirements of the adopted child amendment "would prevent abuse through ad hoc adoptions made only for the purpose of circumventing the immigration laws."

[2] We have recently held, however, that if the marriage creating the steprelationship is determined to be a sham, then we will not recognize for immigration purposes steprelationships created as a result of that marriage. *See Matter of Awwal,* 19 I&N Dec. 617 (BIA 1988).

requirements of the statute and show they have shared a principal dwelling place for 2 years. In *Matter of Cho*, we asserted that district directors should not impose stricter standards on adoptive relationships than Congress and we recognized that Congress inserted specific safeguards against ad hoc adoptions. However, an examination of the nature of the parties' residence with one another is not precluded by *Matter of Cho, supra.*

Taking the petitioner's arguments to their logical extreme, district directors would have to recognize all adoptions meeting the age and legal custody requirements of the Act where the parties have shared a principal dwelling place for 2 years even if they concede that the sole purpose of the adoption was to facilitate entry of the adopted child into the United States. While it may be a rare occasion that an adoptive parent admits such purpose for an adoption, we note that most of the cases which raise the specter of a sham adoption arise in a limited factual context. Generally, the adoption is by a close relative, the natural parent or parents are still alive, the cohabitation of the adoptive parent and child occurs with the natural parent or parents, often in the home of the natural parents, and no meaningful objective evidence is provided that the relationship between the natural parents and adopted child changed subsequent to the adoption. Further, the adoptive parent often leaves the residence at some point after the adoption, sometimes for years, while the natural parents and adopted child continue to live together.

In both *Matter of Repuyan, supra,* and *Matter of Cuello,* 20 I&N Dec. 94 (BIA 1989), we concluded that such adoptions must be evaluated in light of the congressional intent to recognize only bona fide adoptive relationships. To facilitate congressional intent, we determined in *Matter of Cuello, supra,* that the residence requirement of section 101(b)(1)(E) of the Act means more than simply that the adopted child and adoptive parent live together in the same residence for 2 years.[3] We determined that, under the circumstances described above, the adoptive parent has the burden of establishing primary parental control during his or her residence with the adopted child. *Id.* In order to establish parental control, the petitioner may submit competent objective evidence that the adoptive parent owns or maintains the property where the child resides, provides financial support and daily care, and assumes responsibility for important decisions in the child's life. *Id.* A description of the relationship

---

[3] We disagree with the petitioner's assertion that an examination of the nature of the parties' residence adds a requirement to section 101(b)(1)(E) of the Act. Rather, we are interpreting the residence requirement of that section.

between the adopted child and her natural parents subsequent to the adoption must also be provided. *Id.*

In the instant case, the petitioner concedes that she resided with the beneficiary and her natural mother in the home of the beneficiary's natural mother. No competent objective evidence was proffered to establish that the petitioner exercised primary parental control during the parties' residence with one another. *See Matter of Cuello, supra; Matter of Repuyan, supra.* We accordingly find that the district director had good and sufficient cause to issue the notice of intention to revoke and we agree with the district director that the evidence the petitioner submitted in response to that notice is insufficient to establish compliance with the 2-year residence requirement of section 101(b)(1)(E) of the Act. Inasmuch as the basis for revocation alleged in the notice has not been overcome by the petitioner, the appeal will be dismissed. *See generally Matter of Estime,* 19 I&N Dec. 450 (BIA 1987).

**ORDER:** The appeal is dismissed.

## MATTER OF TAWFIK

In Visa Petition Revocation Proceedings

A-26653077

*Decided by Board February 28, 1990*

(1) In making a determination that a beneficiary's prior marriage comes within the purview of section 204(c) of the Immigration and Nationality Act, 8 U.S.C. § 1154(c) (1988), as a marriage entered into for the purpose of evading the immigration laws, the district director should not give conclusive effect to determinations made in prior proceedings, but, rather, should reach an independent conclusion based on the evidence of record, although any relevant evidence may be relied upon, including evidence having its origin in prior Service proceedings involving the beneficiary or in court proceedings involving the prior marriage.

(2) A decision to revoke approval of a visa petition because the beneficiary entered into a prior marriage for the primary purpose of obtaining immigration benefits can only be sustained if there is substantial and probative evidence in the alien's file to the effect that the prior marriage was entered into for such purpose, and, where the district director concluded that there was evidence in the record from which it could "reasonably be inferred" that a marriage had been entered into for the primary purpose of obtaining immigration benefits, the substantial and probative evidence, requisite to the revocation of a subsequently approved visa petition, was not presented.

ON BEHALF OF PETITIONER:
Milton A. DeJesus, Esquire
P.O. Box 22634
Little Rock, Arkansas 72221

ON BEHALF OF SERVICE:
Harris L. Leatherwood
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

The United States citizen petitioner applied for immediate relative status for the beneficiary as her spouse under section 201(b) of the Immigration and Nationality Act, 8 U.S.C. § 1151(b) (1982). The petition was approved on September 14, 1987. In a decision dated July 25, 1989, the district director revoked approval of the petition on the ground that the beneficiary had previously attempted to be accorded immediate relative status as the spouse of a United States citizen by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws. The

166

petitioner has appealed[1] The appeal will be sustained and approval of the visa petition will be reinstated. The petitioner's request for oral argument is denied. *See* 8 C.F.R. § 3.1(e) (1989).

The beneficiary, a 44-year-old native and citizen of Egypt, married the petitioner in 1987. The record reflects that this was his third marriage, and his second marriage to a United States citizen.

In the instant proceedings, the district director revoked the beneficiary's approved visa petition, filed on his behalf by the petitioner. Under section 205 of the Act, 8 U.S.C. § 1155 (1982), the Attorney General may revoke the approval of any visa petition approved by him for what he deems to be "good and sufficient cause." A notice of intention to revoke a visa petition is properly issued for "good and sufficient cause" when the evidence of record at the time of issuance, if unexplained and unrebutted, would warrant a denial of the visa petition based upon the petitioner's failure to meet his burden of proof. However, where a notice of intention to revoke is based upon an unsupported statement, revocation of the visa petition cannot be sustained. *Matter of Arias*, 19 I&N Dec. 568 (BIA 1988); *Matter of Estime*, 19 I&N Dec. 450 (BIA 1987).

The notice of intention to revoke the visa petition at issue here, dated September 8, 1988, was issued based on the premise that the beneficiary had previously "engaged in and sought status through a marriage that was determined to have been entered into for the purpose of evading immigration laws."

Section 204(c) of the Act, 8 U.S.C. § 1154(c) (1988), prohibits the approval of a visa petition filed on behalf of an alien who has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws. Accordingly, the district director must deny any subsequent visa petition for immigrant classification filed on behalf of such alien, regardless of whether the alien received a benefit through the attempt or conspiracy. As a basis for the denial it is not necessary that the alien have been convicted of, or even prosecuted for, the attempt or conspiracy. However, the evidence of such attempt or conspiracy must be documented in the alien's file and must be substantial and probative. *Matter of Kahy*, 19 I&N Dec. 803 (BIA 1988); *Matter of Agdinaoay*, 16 I&N Dec. 545 (BIA 1978); *Matter of La Grotta*, 14 I&N Dec. 110 (BIA 1972); 8 C.F.R. § 204.1(a)(2)(iv) (1989).

---

[1] The Immigration and Naturalization Service has requested that this appeal be dismissed based on the fact that the beneficiary's name, along with that of the petitioner, appears on the Notice of Appeal to the Board of Immigration Appeals (Form I-290A). That request will be denied. An appeal creating Board jurisdiction to review this case on the merits has been filed by the petitioner. *See Matter of Sano*, 19 I&N Dec. 299 (BIA 1985).

Neither section 204(c) of the Act nor the regulations specify who may make the Attorney General's decision in such matters and at what point it is to be made. However, we have held that the determination is to be made on behalf of the Attorney General by the district director in the course of his adjudication of the subsequent visa petition. *Matter of Samsen*, 15 I&N Dec. 28 (BIA 1974).

In making that adjudication, the district director may rely on any relevant evidence, including evidence having its origin in prior Service proceedings involving the beneficiary, or in court proceedings involving the prior marriage. Ordinarily, the district director should not give conclusive effect to determinations made in a prior proceeding, but, rather, should reach his own independent conclusion based on the evidence before him. *See Matter of F-*, 9 I&N Dec. 684 (BIA 1962). However, for example, in a case where the beneficiary has previously been found deportable based on a determination, supported by clear, unequivocal, and convincing evidence, that that beneficiary became a party to a fraudulent marriage for the purpose of entering the United States as an immigrant, it would be appropriate for the district director to rely on that finding of deportability in a determination that the beneficiary would be precluded by section 204(c) of the Act from obtaining an immigration benefit by virtue of a subsequent marriage. *Matter of Agdinaoay, supra.*

In this case, the district director noted that the evidence showing that the beneficiary had entered into a marriage for the purpose of evading the immigration laws had been "sufficient to warrant the denial of the petition" filed by the beneficiary's former United States citizen spouse, and, on that basis, the previously approved visa petition, filed by the beneficiary's current United States citizen spouse, was revoked on July 25, 1989. It is to be noted, however, that in the determination of the first visa petition submitted on behalf of the beneficiary, it was not found that the beneficiary had attempted or conspired to enter into a marriage for the purpose of evading the immigration laws. Rather, the district director involved in the determination of that petition noted that the record contained evidence, which had not been rebutted, "from which it [could] reasonably be inferred" that the beneficiary entered into a marriage for the primary purpose of obtaining immigration benefits. Such a reasonable inference does not rise to the level of substantial and probative evidence requisite to the preclusion of approval of a visa petition in accordance with section 204(c) of the Act.

Since, with respect to the first visa petition submitted on behalf of the respondent, there was no affirmative finding that the marriage was entered into for the purpose of evading the immigration laws, resolution of whether the visa petition revocation can be sustained will

depend on a determination of whether there is, at present, sufficient evidence, inclusive of evidence relied upon in the determination of the first visa petition, to support the contention that the beneficiary's previous marriage to a United States citizen was entered into for purposes of evading the immigration laws.

The beneficiary's first marriage to a United States citizen took place in 1985. The Petition to Classify Status of Alien Relative for Issuance of Immigrant Visa (Form I-130) filed on behalf of the beneficiary by his first United States citizen wife was denied by the district director on January 30, 1987, based on the finding that the marriage was entered into for the primary purpose of obtaining immigration benefits for the beneficiary. The basis for the finding was the fact that the petitioner and beneficiary lived in different cities at the time of the denial, and on the conclusion that, at the same time, the beneficiary was living with his first wife, a citizen of Egypt. No evidence beyond these conclusions is contained in the record.

We note that while the petition filed by the beneficiary's first United States citizen wife was still pending before the district director, the beneficiary divorced that wife, without knowledge as to what the outcome of the petition might be. The divorce decree, entered on December 17, 1986, 1 1/2 months prior to the denial of the petition, provides that the beneficiary and his wife "were a married couple and lived together as husband and wife until August 1986 and since then have lived separate and apart." The mere fact that, at the time of the visa petition denial, the petitioner was living separate from the beneficiary is not evidence of an attempt or conspiracy on the beneficiary's part to enter into a marriage for the purpose of evading the immigration laws. Quite to the contrary, his divorce, prior to a decision on the petition which may have been to his favor, tends to reflect the bona fide nature of the marriage that he chose to terminate. Further, the district director offered no evidence to support his conclusion that the petitioner never lived with the beneficiary. With respect to the concern that, during the course of the marriage of the beneficiary and his first United States citizen wife, the beneficiary was living with his former wife, we note that, according to the information contained in the divorce decree of the beneficiary and his first United States citizen wife, their separation occurred 4 months prior to their divorce and 5 months prior to the denial of the petition submitted on the beneficiary's behalf. Therefore, the conclusion of the district director that the beneficiary was living with his former wife at the time of the denial, a conclusion also unsupported by documentary evidence, is, of itself, of no relevance to the issue of whether the beneficiary

entered into the marriage with his first United States citizen wife in an attempt to evade the immigration laws.[2]

In order to sustain the district director's revocation of the visa petition at issue here, it would be necessary to show that approval of that visa petition was precluded by section 204(c) of the Act, which bars approval of a visa petition for the benefit of an alien who has attempted to enter into a marriage for the purpose of evading the immigration laws. If that were the case, the previously approved visa petition would have been revoked for "good and sufficient cause." *Matter of Arias, supra; Matter of Estime, supra.* However, the language of the Code of Federal Regulations is clear that in order to find that an alien has attempted to enter into a marriage for the purpose of evading the immigration laws, the evidence of such an attempt must be documented in the alien's file. 8 C.F.R. § 204.1(a)(2)(iv) (1989); *Matter of Kahy, supra.* No such documentation is contained in the record before us, and, therefore, there is no basis to support the district director's conclusion that the beneficiary's prior marriage to a United States citizen was entered into for the purpose of evading the immigration laws. Since the beneficiary's prior marriage provided the sole basis for the revocation of his approved visa petition and there is no substantial and probative evidentiary basis for a finding that that marriage was entered into for the purpose of evading the immigration laws, the revocation of the previously approved visa petition cannot be sustained. Accordingly, the petitioner's appeal will be sustained, and the district director's decision will be reversed.

**ORDER:** The appeal is sustained, and the approval of the visa petition is reinstated.

---

[2] On appeal, the petitioner herein, who has since had a child with the beneficiary, notes that prior to the termination of the beneficiary's marriage to his first United States citizen wife, the beneficiary's former wife and a child of that marriage, both natives and citizens of Egypt, were staying with him in order for the child to obtain medical treatment in the United States.