# Matter of R. HUANG, Beneficiary of a visa petition filed by Mei Huang, Petitioner

*Decided July 8, 2015*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The beneficiary of a visa petition who was adopted pursuant to a State court order that was entered when the beneficiary was more than 16 years old, but with an effective date prior to his or her 16th birthday, may qualify as an adopted child under section 101(b)(1)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1101(b)(1)(E)(i) (2012), so long as the adoption petition was filed before the beneficiary's 16th birthday and the State in which the adoption was entered expressly permits an adoption decree to be dated retroactively. *Matter of Cariaga*, 15 I&N Dec. 716 (BIA 1976), and *Matter of Drigo*, 18 I&N Dec. 223 (BIA 1982), modified.

FOR PETITIONER: Wayne J. Chi, Esquire, San Francisco, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Michael J. Sheridan, Associate Counsel

BEFORE: Board Panel: MALPHRUS and MULLANE, Board Members. Concurring Opinion: CREPPY, Board Member.

MALPHRUS, Board Member:

In a decision dated August 17, 2009, the District Director revoked the approval of the petitioner's visa petition, which she had filed on behalf of the beneficiary as her adopted child pursuant to section 101(b)(1)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1101(b)(1)(E)(i) (2006). The petitioner has appealed from that decision. The appeal will be sustained in part and the record will be remanded.

## I. FACTUAL AND PROCEDURAL HISTORY

The beneficiary, who was born in China on March 22, 1988, entered the United States as a nonimmigrant visitor on February 22, 2002, when she was nearly 14 years old. The petitioner, who is the beneficiary's paternal aunt, filed a petition to adopt the beneficiary in Hawaii on February 2, 2004, 2 months before the beneficiary's 16th birthday. A State court judge issued an adoption decree on May 3, 2004, after the beneficiary's

16th birthday, but the effective date of the decree was made retroactive to February 2, 2004, the day the petition was filed.

In May 2006, the petitioner, who was naturalized in 2004, filed a visa petition to accord the beneficiary immediate relative status as her adopted child. The petition was initially approved, but the District Director later revoked it, finding that the adoption was not valid for immigration purposes because it had not occurred before the beneficiary reached the age of 16.

## II. ISSUE

The question before us is whether a beneficiary whose adoption decree was issued after she was 16 years old, but with a retroactive effective date prior to her 16th birthday, can qualify as a "child" who was "adopted while under the age of sixteen," as required by section 101(b)(1)(E)(i) of the Act.

## III. ANALYSIS

For a beneficiary to qualify as an adopted child, the petitioner must establish that the beneficiary qualifies as a "child," that is, he or she must be an unmarried person under 21 years of age, who was "adopted while under the age of sixteen years" and has been in the legal custody of, and resided with, the adopting parent for at least 2 years. Section 101(b)(1)(E)(i) of the Act. The regulations also require that "the adoption took place before the beneficiary's sixteenth birthday." 8 C.F.R. § 204.2(d)(2)(vii) (2015); *see also* 8 C.F.R. § 204.2(d)(2)(vii)(C) (providing that "the child must have been under 16 years of age when the adoption is finalized").

The phrase "adopted while under the age of sixteen years" is not defined in the Act or regulations. Based on "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole," we conclude that the statutory language is ambiguous as to whether a retroactive adoption decree is valid for immigration purposes. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also Matter of C-T-L-*, 25 I&N Dec. 341, 344−45 (BIA 2010).

### A. Retroactive Orders of Adoption

In *Matter of Cariaga*, 15 I&N Dec. 716 (BIA 1976), we held that an adoption was not valid for immigration purposes where the adoption process was initiated after the beneficiary was 18 years old and the decree was made retroactive to a date 12 years earlier. We concluded that the age restriction in section 101(b)(1)(E) of the Act should be given a literal

interpretation and that, despite the retroactive effect given to the adoption by the State court, "an adoptive relationship was not created." *Id*. at 717. Relying on *Cariaga*, we subsequently concluded in *Matter of Drigo*, 18 I&N Dec. 223 (BIA 1982), that for immigration purposes, we do not recognize an adoption decree as being effective as of the date it was entered nunc pro tunc.[1] We noted in that case that it was "Congress' intent that the age restriction in section 101(b)(1)(E) be construed strictly." *Id.* at 224.

Our decisions in *Cariaga* and *Drigo* discussed the two major policy interests that Congress addressed in enacting the laws relating to adoptions: fostering family unification and preventing ad hoc or fraudulent adoptions. We explained that "Congress was concerned with the problem of keeping the families of immigrants united" and therefore "provided liberal treatment of children." *Matter of Cariaga*, 15 I&N Dec. at 717; *see also Matter of Yuen*, 14 I&N Dec. 71, 72 (BIA 1972) (noting that the adoption provision "was designed to prevent hardship and to keep families together").

However, we also noted that when Congress passed the 1952 Act, it chose not to extend immigration benefits to adopted children "for fear that fraudulent adoptions would provide a means of evading the quota restrictions." *Matter of Cariaga*, 15 I&N Dec. at 717. In 1957, Congress added a provision to include adopted children within the definition of a "child," but it imposed an age restriction in an attempt to "distinguish between *bona fide* adoptions, in which a child has been made a part of a family unit, and spurious adoptions, effected in order to circumvent statutory restrictions." *Id.*; *see also Matter of M-*, 8 I&N Dec. 118, 119 (BIA 1958; A.G. 1959) (noting that "safeguards were written into law designed to prevent abuses, such as adoptions entered into for the purpose of evading the immigration laws").

Not only are such spurious adoptions in violation of the statutory restrictions, they do not advance the interests of family unification. Where there is no indication that the biological parents are unable to continue their parental responsibilities, an adoption can actually undermine family unity by legally severing the biological family unit for improper purposes.

Congress has expressed concern about efforts to avoid the statutory quota restrictions, whether through fraudulent adoptions that have no factual basis for the underlying relationship or those that, despite having the

---

[1] Nunc pro tunc, which literally means "now for then," refers to a court's power to give an order "retroactive legal effect." *Black's Law Dictionary* 1174 (9th ed. 2009); *see also Singh v. Mukasey*, 533 F.3d 1103, 1110 (9th Cir. 2008) (stating that nunc pro tunc "does not imply the ability to alter the substance of that which actually transpired or to backdate events to serve some other purpose") (quoting *United States v. Sumner*, 226 F.3d 1005, 1010 (9th Cir. 2000)).

appearance of validity, are actually motivated by a desire to circumvent the immigration laws. It is these latter adoptions, which are the most difficult to identify, that Congress primarily targeted through the statutory restrictions for adopted children. *See Matter of Repuyan*, 19 I&N Dec. 119, 122 (BIA 1984) (stating that Congress intended to "prevent abuse through ad hoc adoptions made only for the purpose of circumventing the immigration laws").

It was within the purview of Congress to establish an age limitation to discourage adoptions that are entered into for the purpose of obtaining immigration benefits. This is so even if its line drawing has the effect of excluding some adoptions that are bona fide; a statutory scheme of this nature will inevitably exclude some valid relationships and include some that are not valid. *See Romero-Ochoa v. Holder*, 712 F.3d 1328, 1331 (9th Cir. 2013) (holding that Congress could rationally draw conclusive lines in drafting immigration laws, "even though [they] may prove over- or under-inclusive in individual cases").

As the concurring opinion notes, the process by which the Department of Homeland Security ("DHS") evaluates a visa petition for an adopted beneficiary involves more than determining if the age limits have been met and the State court has approved the adoption. *See Matter of Marquez*, 20 I&N Dec. 160, 163−65 (BIA 1990). However, the DHS explained that in assessing whether an adoption is bona fide, it can be very difficult to determine if the adoption is actually motivated by a desire to provide immigration benefits rather than to create a familial relationship, even when the adoption is finalized before the beneficiary is 16. In fact, it can be more difficult to detect fraud in an adoptive relationship than in a marital one. Thus, the age restriction provides an important deterrent to fraud and abuse of the system.

Under the rule we established in *Cariaga* and *Drigo*, retroactive and nunc pro tunc orders of adoption were always invalid for immigration purposes. The DHS urges us to reaffirm those decisions, arguing that the regulations require that a child must be under the age of 16 years when the adoption is approved in order to be eligible for immigration benefits. However, the regulations do not specifically address nunc pro tunc orders and, in our view, do not prohibit a more measured approach. In interpreting section 101(b)(1)(E)(i) of the Act, it is appropriate for us to balance Congress' interest in fostering family unification against its clear intent to prevent abuse in the immigration process. *See Matter of Marquez*, 20 I&N Dec. at 164 (stating that "adoptions must be evaluated in light of the congressional intent to recognize only bona fide adoptive relationships").

The beneficiary was granted a retroactive order of adoption in Hawaii. Under section 578-8(a) of the Hawaii Revised Statutes, a decree of

adoption "shall take effect upon such date as may be fixed therein by the court, such date to be not earlier than the date of the filing of the petition and not later than six months after the date of the entry of the decree." Thus, Hawaii expressly permits a court to establish an effective date for an adoption that is prior to the date the decree is entered, so long as it is not before the date the petition was filed.

The statutory authority to enter an adoption order that is effective as early as the date the petition was filed is not an open-ended exercise of judicial authority based on general equitable principles. It is expressly authorized by the Hawaii statute and is objectively verifiable. Although the statute gives the State courts discretion to enter an effective date different from the date the decree is entered, the law prohibits the court from making the adoption effective before the date the petition was filed. This is significant because it helps to deter abuse of the immigration laws. *See Sook Young Hong v. Napolitano*, 772 F. Supp. 2d 1270, 1280 (D. Haw. 2011) (recognizing an adoption for immigration purposes under Hawaii law and noting that the statute would not allow a person older than 16 at the time of filing to obtain a retroactive adoption that would qualify under the Act).

Having considered the arguments of the parties and the limited nature of the Hawaii statute, we conclude that the blanket rule we have applied for many years is too limiting in that it does not allow us to adequately consider the interests of family unity. Thus, we will revisit the position we took in *Cariaga* and *Drigo*.[2] Accordingly, we will no longer deny a visa petition where the adoption petition was filed before the beneficiary's 16th birthday, the State in which the adoption was entered expressly permits an adoption decree to be dated retroactively, and the State court entered such a decree consistent with that authority. Therefore, we withdraw from our prior decisions to the extent that they prohibit recognition of such an adoption decree based solely on the rule that a petition must always be approved before the beneficiary turns 16.

Nevertheless, contrary to the concurring opinion, we conclude that, at a minimum, the regulations and statutory context indicate that the adoption process must have been initiated before the child reaches the age of 16. An

---

[2] The United States Court of Appeals for the Ninth Circuit, in whose jurisdiction this cases arises, rejected our interpretation of the age restriction in section 101(b)(1)(E)(i) of the Act as unreasonable. *Amponsah v. Holder*, 709 F.3d 1318 (9th Cir. 2013). The court has withdrawn that opinion, stating that "the Board is considering whether to overrule or modify *Matter of Cariaga*." *Amponsah v. Holder*, 736 F.3d 1172, 1172 (9th Cir. 2013). We are unaware of any other circuit court authority that has rejected our approach to the age restriction. *See Mathews v. USCIS*, 458 F. App'x 831, 833 (11th Cir. 2012) (finding our interpretation of the adoption age restriction to be reasonable).

adoption order is not merely a ministerial act that simply recognizes or formalizes a prior relationship.  It is a judicial order that actually creates the adoptive relationship.  *See Black's Law Dictionary* 55 (9th ed. 2009) (stating that adoption "creates a parent-child relationship between the adopted child and the adoptive parents with all the rights, privileges, and responsibilities that attach to that relationship").  So while it may be reasonable to recognize an adoption decree that is retroactive to the date the process was initiated, it would not be appropriate to extend Congress' mandated age limitations where the effective date of the decree predates the initiation of the legal process on which the adoption order is based. Allowing such adoptions would create clear opportunities to circumvent the statutory age restrictions and thus abuse the immigration process.

Our new rule advances both of Congress' policy interests in enacting the adoption statutes—family unity and the prevention of fraud and abuse in the immigration system.  By recognizing retroactive adoptions as valid for immigration purposes but still requiring the petition to be filed before the child turns 16, we ensure that the recognition of adoptions remains tethered to the age limit Congress imposed.  Without this restriction an adoption decree could be made retroactively effective to many years before the adoption took place, as was the case in *Cariaga*, where the adoption petition was filed after the beneficiary was 18 and the decree was made retroactive to a date 12 years before its entry.  Although we now consider the holding in *Cariaga* to be too restrictive, the result in that case remains proper and would be the same under the rule we adopt here.[3]

### B.  Full Faith and Credit

Although we have determined that our prior rule was too restrictive, we are not persuaded that we must recognize the beneficiary's adoption based on the statutory principle of full faith and credit in 28 U.S.C. § 1738 (2012), which provides that the judicial proceedings of a State court must be recognized as effective by other jurisdictions.  *See Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 400 n.51 (5th Cir. 2006).  That principle is not controlling in this context.

In *Bustamante-Barrera*, the United States Court of Appeals for the Fifth Circuit considered the effect of a nunc pro tunc custody decree granted in

---

[3]  We note that Congress has not modified the statute in response to *Matter of Cariaga* even though it amended the Act several times after our decision was issued.  For example, in 1981 it raised the age limit for adoption from 14 to 16 years.  *See* Immigration and Nationality Act of 1981, Pub. L. No. 97-116, § 2(b), 95 Stat. 1611, 1611.

California on the question of the legal custody of a child for purposes of naturalization. The court stated that its refusal to credit the decree "for purposes of federal immigration law [did] not even implicate the Full Faith and Credit Act" because, for purposes of the naturalization statute, the child's custody status was determined only by Federal law. *Id.* Citing *Fierro v. Reno*, 217 F.3d 1 (1st Cir. 2000), the court agreed with the First Circuit's refusal to give effect to a retroactively amended divorce decree, stating that relying on such a nunc pro tunc order would "create the potential for significant abuse and manipulation of federal immigration and naturalization law." *Id.* at 401; *cf. Minasyan v. Gonzales*, 401 F.3d 1069, 1080 n.20 (9th Cir. 2005) (distinguishing *Fierro*, where a nunc pro tunc divorce decree created a legal fiction by retroactively changing the relationship, from the petitioner's decree, which recognized a separation that was actually in effect in practice and as a matter of State law).

Domestic relations is "an area that has long been regarded as a virtually exclusive province of the States." *United States v. Windsor*, 133 S. Ct. 2675, 2691 (2013). However, immigration and naturalization law "exists independent of state family law." *Bustamante-Barrera v. Gonzales*, 447 F.3d at 399−400 (noting the "overarching constitutional interest in uniformity of federal immigration and naturalization laws"). It is well established that a State court's recognition of a marriage as valid under State law does not conclusively mean that immigration benefits will be conferred based on that marriage. *See, e.g.*, *Matter of Laureano*, 19 I&N Dec. 1, 2 (BIA 1983); *Matter of Brantigan*, 11 I&N Dec. 493, 494 (BIA 1966); *see also Matter of Magana*, 17 I&N Dec. 111, 114 n.1 (BIA 1979) (declining to give full faith and credit to a retroactive State court decree declaring a marriage to be void ab initio).

An adoption is similar to a marriage in that the relationship must be assessed on a case-by-case basis for immigration purposes, even if the State views the relationship as valid. *See Matter of Marquez*, 20 I&N Dec. at 163; *Matter of Y-K-W-*, 9 I&N Dec. 176, 179 (A.G. 1961). A State court's evaluation of an adoption petition does not include an investigation into whether the relationship was entered into "to facilitate entry of the adopted child into the United States." *Matter of Marquez*, 20 I&N Dec. at 163.

In regard to both adoption and marriage, Congress has expressed concern regarding the potential for abuse of the immigration process and has carefully drafted the Act in an effort to prevent fraud. *See Kalal v. Gonzales*, 402 F.3d 948, 952 (9th Cir. 2005) (noting the "carefully crafted scheme that Congress created for the purpose of avoiding marriage fraud"); *Matter of Li*, 20 I&N Dec. 700, 702 n.3 (BIA 1993); *Matter of Marquez*, 20 I&N Dec. at 163−64. As part of that scheme, Congress included a definitive age restriction as a means of limiting who could

qualify as an adopted child, separate from an evaluation of the bona fides of the relationship. Therefore, we cannot give full faith and credit to a State adoption decree without regard to whether the State law provides limitations like those in Hawaii that would preserve the integrity of the age restrictions that Congress considered to be essential to whether an adoption should be recognized for immigration purposes.

We are aware of district court decisions rejecting *Matter of Cariaga* and holding that a beneficiary who was adopted by an order that was issued after the child turned 16, but with an effective date prior to the child's 16th birthday, qualifies as a "child" under section 101(b)(1)(E)(i) of the Act. *See Cantwell v. Holder*, 995 F. Supp. 2d 316 (S.D.N.Y. 2014); *Gonzalez-Martinez v. Dep't of Homeland Sec.*, 677 F. Supp. 2d 1233 (D. Utah 2009).[4] We are not bound to follow district court decisions. *See Matter of K-S-*, 20 I&N Dec. 715 (BIA 1993). Nevertheless, we have reviewed the reasoning in these cases, which was based, in part, on principles of full faith and credit and which also viewed *Cariaga* as not having adequately considered congressional intent regarding family unification. While we disagree with the district courts' reliance on full faith and credit, we do now place greater emphasis on family unity and agree that, in certain circumstances, retroactive adoptions should be recognized.

## C. Beneficiary's Adoption Under Hawaii Law

Section 578-8(a) of the Hawaii Revised Statutes expressly permits a court to establish an effective date for an adoption that is prior to the date the decree is entered, so long as it is not before the date the petition was filed. Thus, pursuant to this statute and section 101(b)(1)(E)(i) of the Act, a person who is older than 16 at the time of filing the petition would not qualify as an adopted child under the immigration laws. *See Sook Young Hong v. Napolitano*, 772 F. Supp. 2d at 1280.

In this case, the petition to adopt the beneficiary was filed 2 months prior to her 16th birthday, but the adoption decree was issued after her 16th birthday. The judge made the effective date of the order of adoption retroactive to the day the petition was filed. Accordingly, we will sustain the petitioner's appeal to the extent that the District Director's decision rejecting the validity of the adoption decree based on its retroactive effective date is contrary to our new rule.

---

[4] We note that in *Khalil v. Napolitano*, 983 F. Supp. 2d 484 (D.N.J. 2013), the court upheld the rejection of a nunc pro tunc adoption, finding that it followed our reasonable interpretation of the immigration laws in accordance with congressional intent.

We nevertheless find it appropriate to remand the record for the District Director to further consider this case. On remand, the petitioner must establish that the adoption warrants recognition under our new rule. In addition to establishing that the adoption decree should be recognized as valid, the petitioner must meet all the requirements of section 101(b)(1)(E)(i) of the Act and show that the adoption was not undertaken for the purpose of conferring immigration benefits on the beneficiary.[5] *See Matter of Marquez*, 20 I&N Dec. at 164. In remanding this matter, we express no opinion as to the ultimate outcome.

## IV. CONCLUSION

In summary, we are convinced that *Matter of Cariaga* and *Matter of Drigo* established a rule that is too rigid in refusing to recognize any nunc pro tunc or retroactive adoption orders. Accordingly, we hold that the rule should be modified in part. We conclude that the phrase "adopted while under the age of sixteen years" is broad enough to encompass a retroactive or nunc pro tunc State court adoption order that was entered after the beneficiary was more than 16 years old, but with an effective date prior to his or her 16th birthday, so long as the adoption petition was filed before the beneficiary's 16th birthday and the State expressly permits an adoption decree to be dated retroactively.

**ORDER:** The appeal is sustained in part.

**FURTHER ORDER:** The record is remanded to the District Director for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

*CONCURRING OPINION:* Michael J. Creppy, Board Member

I respectfully concur.

I agree with the majority that our holdings in *Matter of Cariaga*, 15 I&N Dec. 716 (BIA 1976), and *Matter of Drigo*, 18 I&N Dec. 223 (BIA 1982), established a rule that is too rigid in holding that retroactive or nunc pro tunc adoption decrees are always invalid for immigration purposes.

I write separately because nothing in either the statute or legislative history indicates a congressional intent to exclude a potential category of

---

[5] At the time of the beneficiary's adoption her biological parents were both living in China. The record includes a letter from the petitioner stating that the beneficiary's "parents and I believe that growing up in Hawaii will benefit her most."

bona fide adoptive relationships that were legally established prior to the child's 16th birthday, as evidenced by a lawful adoption decree.

I do not find support for the majority's general conclusion that the timing of the filing of the adoption petition with the court or other government entity may be the determinative factor as to whether the retroactive or nunc pro tunc adoption decree should be recognized for immigration purposes. The failure to file a petition for adoption prior to the child's 16th birthday does not nullify the existence of a valid adoptive relationship that was legally established prior to the beneficiary's 16th birthday by a lawful adoption decree.

Generally, the Act requires an alien seeking a family-based immigration benefit to establish the existence of a qualifying relationship. *See* sections 201(a)(1), (b)(2)(A)(i), 203(a) of the Immigration and Nationality Act, 8 U.S.C. §§ 1151(a)(1), (b)(2)(A)(i), 1153(a) (2012); *see also* 8 C.F.R. § 204.2 (2015). A family-based immigration petition based on an adoption is no different, because a qualifying adoptive relationship must legally exist. The existence of a legal qualifying adoptive relationship is established by the issuance of a valid adoption decree by a court or other government entity. Therefore, where a lawful adoption decree establishes the existence of an adoptive family relationship that was created prior to child's 16th birthday, it is a qualifying relationship for immigration purposes, regardless of whether the decree is retroactive or not.

On this basis, I conclude that it is not the filing of the petition for adoption that is the determinative factor of this issue. Rather, it is the legal establishment of an adoptive relationship prior to the child's 16th birthday, by a legally valid adoption decree, that is the determinative and controlling factor as to whether the retroactive or nunc pro tunc adoption decree should be recognized as establishing the existence of a qualifying relationship for immigration purposes.

However, it is important to bear in mind that while a final adoption decree provides for the legal existence of an adoptive relationship under the laws of the jurisdiction where it took place, it does not establish that a bona fide adoptive relationship exists within the meaning of the Act. An adoption decree is not conclusive evidence that the adoptive relationship is bona fide for immigration purposes until the Department of Homeland Security ("DHS"), in evaluating the petitioner's evidence, including the adoption decree, determines that a bona fide adoptive family relationship was established. The issuance of an adoption decree does not divest the DHS of its sole authority to determine if the adoptive family relationship is bona fide for immigration purposes.