## IN THE MATTER OF THE ADOPTION OF J.P.

Family No. ST-06-AD-004

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

November 8, 2010

VINCENT A. FULLER, JR., ESQ., Law Offices of Vincent Fuller, Jr., St. Thomas, USVI.

ALFRED J. STONE, III, ESQ., BoltNagi, P.C., St. Thomas, USVI.

THOMAS, *Judge*

### MEMORANDUM OPINION

(November 8, 2010)

Before the Court is a Memorandum from the Petitioners in support of their request that this Court apply the adoption granted on April 9, 2010 *nunc pro tunc* to June 16, 2008. ("Memorandum"). The issue raised by the Petitioners is whether the facts in the instant action support the *nunc pro tunc* application of the adoption decree.

On September 22, 2006, the Petitioners Clemencia Cecilia Jules and Claudius Jules filed a Petition for Adoption. In the Petition, the Petitioners expressed an interest in adopting their granddaughter J.P. ("Adoptee"), born on June 18, 1992, who had been in the custody of the Petitioners

since she was two and one-half (2½) years old.[1] On September 28, 2006, the Petitioners filed a Motion to serve the biological mother by Publication in St. Maarten, Netherlands Antilles because the Petitioners were unsure of her whereabouts. On November 21, 2007, the biological mother filed a letter with the Court opposing the adoption and alleging that the Petitioners had kidnapped her daughter, the adoptee. On November 29, 2007, the court appointed Alfred J. Stone, III, Esq. as the Guardian *ad litem*.[2] On August 1, 2008, Paula D. Norkaitis, Esq. on behalf of the Guardian *ad litem*, filed a report stating that she spoke to the biological mother who, upon learning that her daughter was pregnant, indicated that she was no longer opposing the adoption. Attorney Norkaitis also reports that the paternal grandmother of the adoptee is the only mother the adoptee has ever known. On April 1, 2009, the Petitioners submitted a verified Consent to Adoption signed by the biological mother. Another letter from the biological mother was filed with this Court on December 10, 2009, reaffirming her desire to allow the paternal grandparents to adopt her daughter. On January 19, 2010, another verified Consent to Adoption was filed by the Petitioners on behalf of the biological mother.

An adoption hearing was held on April 9, 2010, and this Court granted the Petition for the adoption of J.P. Counsel for the Petitioners then raised the issue of applying the adoption decree *nunc pro tunc* and this Court took the issue under advisement and requested that a Memorandum of Law in support thereof be submitted. On May 4, 2010, the biological mother filed a Consent to Adoption dated April 22, 2010, stating that on June 16, 2008, through Attorney Norkaitis, she verbally consented to her daughter's adoption. She also indicated that she was ratifying and confirming the verbal consent given on June 16, 2008 through her Consent to Adoption.

This Court is tasked with deciding whether or not it can order that an adoption decree be applied *nunc pro tunc* to June 16, 2008, the date on which the biological mother, Jocelyn Claudette Williams, gave Attorney Norkaitis her verbal consent for the adoption of J.P. by her paternal grandparents. Jocelyn Claudette Williams later ratified her consent by

---

[1] Claudius Jules is not the biological grandfather of the adoptee.

[2] On January 14, 2008, Attorney Paula D. Norkaitis filed a Notice of Appearance and indicated that she would be assisting the court-appointed Guardiam *ad litem*.

affidavit dated April 22, 2010. In their Memorandum, the Petitioners rely on two cases in support of their motion: *Messina v. U.S. Citizenship and Immigration Services*, No. Civ. A. 05CV73409DT, 2006 U.S. Dist. LEXIS 10292 (E.D. Mich. Feb. 16, 2006) and *Allen v. Brown*, 953 F. Supp. 199 (N.D. Ohio 1997). In both cases, the Courts applied adoption decrees *nunc pro tunc*.

*Messina v. U.S. Citizenship and Immigration Services*, provides some guidance as the issue on appeal in that case was whether or not the adoptee was adopted before her sixteenth birthday, notwithstanding the absence of an official Italian adoption decree. The record in *Messina* contained evidence that the adoptee was born out of wedlock in Italy. Five (5) days after the child was born, the biological mother wrote a letter petitioning the Italian court to issue a passport to the adoptive parents and requesting that they be given permanent custody of her child. The Italian court then issued the paperwork needed for the adoptive parents to obtain a passport to migrate with the adoptee to the United States. The adoptive parents subsequently petitioned a lower court in Michigan for an adoption decree relating back to the minor's date of birth. The lower court granted the petition of the adoptive parents without relating the adoption back to the minor's date of birth. More than two years after adoption decree was issued, the adoptive parents once again requested that the adoption be applied *nunc pro tunc* to the minor's date of birth. The lower court then granted the request of the adoptive parents and applied the adoption *nunc pro tunc* to the adoptee's date of birth.

The U.S. Citizenship and Immigration Services subsequently refused to give effect to the Order of the lower Court to apply the adoption decree *nunc pro tunc* to the minor's date of birth and the adoptive parents appealed. The appellate court determined that three factors in concert had the same force and effect as an adoption decree: (1) the letter indicating the clear intent of the biological mother to consent to the adoption; (2) the length of time that the adoptee resided with her adoptive parents; and (3) the determination of the Italian court allowing the minor child to obtain a passport to move to the United States because the move was in the child's best interest. Additionally, the appellate court concluded that a factor that prevented the adoptive parents from obtaining an Order of Adoption was the difficulty in locating the biological parents of the adoptee to obtain their consent for the adoption because the adoptee was a minor at the time the Petition was filed. The appellate court concluded

that there was no legal basis for the U.S. Citizenship and Immigration Services to disregard an Order of adoption that relates back to the minor's date of birth and compelled the U.S. Citizenship and Immigration Services agency to recognize the adoption of the adoptee *nunc pro tunc* to the minor's date of birth.

In the instant action, the Petition for adoption was filed on September 22, 2006. For more than one year, the whereabouts of the biological mother was unknown. Once the biological mother was found in November 2007 by publication, she raised an objection to the adoption proceedings citing the circumstances under which the adoptee came to live with her paternal grandparents. Throughout the adoption proceeding, the length of time needed for the biological mother to receive and respond to correspondence in St. Maarten, Netherlands Antilles became a source of substantial delay. The record reflects that Attorney Norkaitis has had to utilize members of the biological mother's community to explain basic concepts, facilitate telephone conferences and transmit documents to and from the biological mother.

By affidavit dated April 14, 2010, Attorney Norkaitis avers that on June 16, 2008, the biological mother gave her verbal consent to the adoption of her daughter by the Petitioners. Similarly, the biological mother, by her Consent to Adoption dated April 22, 2010, also stated that on June 16, 2008, she gave Attorney Norkaitis her verbal consent to her daughter's adoption by the Petitioners. It is evident that the intent of the biological mother on June 16, 2008 was to give her consent to the adoption of her daughter who had been in the custody of the Petitioners since she was two and one-half (2½) years old, notwithstanding the biological mother's initial allegation of kidnapping which was later withdrawn.

For the aforementioned reasons, the Court will apply the adoption granted on April 9, 2010 *nunc pro tunc* to June 16, 2008, the date of the verbal consent of the biological mother. To find otherwise; that is, that the presence of the adoptee with the Petitioners since she was two and one-half (2½) years old, coupled with the verbal consent of the biological mother given on June 16, 2008, and the biological mother's subsequent ratification of her verbal consent through her Consent to Adoption, do not provide a sufficient basis for applying the adoption granted on April 9, 2010 *nunc pro tunc* to June 16, 2008; would result in a travesty of equity. An Order of even date follows.