**Mae Mary ALLEN, et al., Plaintiffs,**

v.

**Robert BROWN, et al., Defendants.**

**No. 1:94 CV 2087.**

United States District Court, N.D. Ohio, Eastern Division.

Feb. 13, 1997.

Maralyn D. Leaf, Boardman, OH, for plaintiffs.

Marcia Walker Johnson, Office of the U.S. Attorney, Cleveland, OH, for defendants.

*MEMORANDUM AND ORDER*

OLIVER, District Judge.

The Plaintiffs, United States citizen Mae Mary Allen and her adoptive daughter, Central African Republic [hereinafter, "the C.A.R."] citizen Oumbata Ndakala Julienne Mad–Bondo [hereinafter, "Mad–Bondo"], seek review of the United States Immigration and Naturalization Service's [hereinafter, "INS"] decision that Mad–Bondo is not an "immediate relative" of Allen. The INS denied Allen's petition to allow Mad–Bondo to remain in the United States based on a provision of its rules which states an adoption does not make one an immediate relative unless the adoption "took place" before the child's sixteenth birthday. Allen avers that she adopted Mad–Bondo before her sixteenth birthday but that she was incorrectly recorded as being Mad–Bondo's guardian. Allen has since appealed her prior guardian status

and the C.A.R. declared her Mad–Bondo's adoptive mother.

The INS moves to dismiss this case pursuant to Fed.R.Civ.P. [hereinafter, "Rule"] 12(b)(6) on the ground that despite the Plaintiffs' assertions, Mad–Bondo's adoption did not comply with the sixteenth birthday rule. The Plaintiffs move for summary judgment pursuant to Rule 56 on the ground that the C.A.R. has declared Allen adopted Mad–Bondo before her sixteenth birthday, thereby according Mad–Bondo immediate relative status. For the reasons that follow, the court grants the Plaintiffs' motion and denies the INS' motion.

## I.

The INS does not dispute the Plaintiffs' recitation of the facts. Mad–Bondo was born in the C.A.R. on July 17, 1972. Her biological mother died at childbirth and Allen, a missionary, raised the child. On or about March 2, 1987, Allen, with Mad–Bondo's natural father's consent, petitioned the Court of Instance of Kembe, C.A.R. for adoption. Instead, that court entered a Tutelage Ordinance, or, guardianship.

On March 26, 1993, the C.A.R. Court of Appeal at Bangui granted Allen's appeal challenging the Tutelage Ordinance as having been wrongfully entered. Under the heading of "Content; 2–Discussion," the Bangui court states:

> Whereas, it appears that Ms. Mae Mary Allen … took this child that became orphan with the intent of adopting her. . . .
>
> . . . .
>
> But whereas the first judge instead of permitting the Plenary Adoption of [Mad–Bondo] had contrarily to the petition of the applicant rendered a Tutelage Ordinance.
>
> *FOR ALL THESE REASONS:*
>
> . . . .
>
> *ON THE SUBSTANCE:* [The Court] Rejects the Tutelage Ordinance with all its provisions.
>
> *SITTING ANEW:* Declares and decides that [Mad–Bondo] … is from now on the ADOPTED DAUGHTER of the appellant Mae Mary Allen.

> Consequently, the Court orders the transcription of the present judgment onto the birth certificate of [Mad–Bondo].

(Compl., Ex. D. (Appellate Decision) at 1–2.)

On the date of the appellate decision, Mad–Bondo was twenty years of age. Subsequent to the Court's decision, Allen filed an immediate relative visa petition on behalf of Mad–Bondo pursuant to the Immigration and Nationality Act [hereinafter, "the Act"], as amended, 8 U.S.C. § 1151(b)(2)(A)(I). On May 23, 1993, the Lincoln Regional Service Center denied Allen's petition stating that Mad–Bondo was not an adopted child under the Act. On January 23, 1994, the Board of Immigration Appeals (BIA) affirmed the decision of the Service Center.

The President of the Bangui appellate court has since submitted a letter explaining its decision as follows:

> The decision in question has retroactive effect.
>
> The retroactivity goes back to the date of March 2, 1987 which is the date when the first decision was rendered in KEMBE.
>
> From that day of March 2, 1987, the appellant Miss MAE MARY ALLEN became legally the adoptive mother of [Mad–Bondo].

(Summ. J. Mot., Ex. E.)

The Plaintiffs have also submitted the affidavit of Cyrus Mad–Bondo. He states in relevant part:

> I formerly studied law at the University of Bangui, Central African Republic. . . .
>
> . . . .
>
> The [Bangui appellate] Court gave correct Entry retroactive effect so that to reach the logical conclusion that, "From the day of March 2, 1987, the appellant Miss Mae Mary Allen became legally the adoptive mother of [Mad–Bondo]." The Court is simply saying that on the 23rd of March, 1993 we changed the judgment wrongly entered.

(Summ. J. Mot., Ex. D.)

Mad-Bondo is now married to Cyrus Mad–Bondo. The couple has a son, Michael Cyrus Mad–Bondo. (Summ. J. Mot., Ex. G.) Mad–

Bondo's mother, Allen, is now approaching eighty years of age and states that she needs her daughter's presence to assist her as she faces various health problems. (Summ J. Mot, Ex. I.)

## II.

When considering a motion to dismiss for failure to state a claim the court must view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In so doing, the court must accept all well pleaded factual allegations as true. *Id* A complaint will be dismissed for failure to state a claim only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *e.g., Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir.1988).

> Summary judgment is appropriate if:
>
> the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

On a motion for summary judgment, the court considers the evidence in "the light most favorable to the party opposing the motion." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970) (citation omitted). A fact is material if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). Therefore, the court should rule "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

As an administrative agency, the INS' statutory interpretation is entitled to deference. *ABF Freight System, Inc. v. NLRB*, 510 U.S. 317, 322–23, 114 S.Ct. 835, 839, 127 L.Ed.2d 152 (1994). The Plaintiffs may overcome that deference by showing its interpretation is irrational, based on an improper understanding of the law, or manifestly contrary to the plain meaning of the statute. *Id.*

## III.

In order to establish "immediate relative" status, a petitioner is required to file a Form I–30, Petition for Alien Relative, and to provide evidence to support the claimed relationship. 8 C.F.R. § 204.1. Section 101(b)(1) of the Act defines an adopted child as follows:

> (1) The term "child" means an unmarried person under twenty-one years of age who is—(E) a child adopted under the age of sixteen years if the child has been in the legal custody of, and has resided with the adopting parent or parents for at least two years; . . . .

8 U.S.C. § 1101(b)(1)(E). When evaluating an adoption, the INS considers the following:

> (vii) Primary evidence for an adopted child. . . . A petition may be submitted on behalf of an adopted child . . . by a United States citizen . . . if the adoption took place before the beneficiary's sixteenth birthday, and if the child has been in the legal custody of the adopting parent or parents for at least two years. A copy of the adoption decree, issued by the civil authorities, must accompany the petition.

8 C.F.R. § 204.2(c)(2)(vii).

The INS, in denying the Plaintiffs' petition, cited the Board of Immigration Appeals decision in *Matter of Cariaga*, 15 I & N Dec. 716, 717 (BIA 1976), which held that the "act of adoption" must occur before the child attains the specified statutory age. Retroactivity will not be given effect. *Id.* The INS argues that under the statute, Mad–Bondo's adoption was given retroactive effect to the age of fourteen rather than having actually taken place at that age.

This court notes a significant factual difference between *Cariaga* and this case. In *Cariaga*, an Iowa couple cared for a native Mexican from age two. When the child was seven, his father executed an affidavit consenting to the adoption of his son by the

petitioner. No act of adoption was sought through any court system prior to the child attaining the statutory age. *Id.* at 717. An Iowa court then entered an adoption retroactive to the date of the father's affidavit. Here, Allen initiated adoption proceedings prior to Mad–Bondo's attainment of the statutory age of sixteen. The Plaintiffs also argue Allen actually was granted an adoption at that time, which was only incorrectly entered as a Tutelage Ordinance.

The INS argues that distinction is irrelevant since the Bangui court held Mad–Bondo was "from now on" Allen's adoptive daughter. The Plaintiffs do not argue the Bangui decision should be retroactively applied in the sense that retroactively is used in *Cariaga,* but that the Bangui judgment holds that Allen did in fact adopt Mad–Bondo in 1987. They point to the fact that the Bangui decision criticized the Tutelage Ordinance as having been based on a mistake.

The plain meaning of the statutory requirement that an adoption "took place" is that Mad–Bondo must have been legally adopted as of that date. The sole question before the court, then, is the legal meaning of the decisions in the Plaintiffs' adoption proceedings. The INS acknowledges that "[a] judgment entered *nunc pro tunc* is given retrospective effect and enforced in the same manner and to the same effect as if entered at the proper time." (Defs.' Suppl. Mem. at 1–2 (citation omitted).) They also admit that "whether nunc pro tunc provisions are provided for in the Central African Republic is a matter of foreign law...." (*Id.* at 2 (citations omitted).) They argue that in the face of the Bangui court's use of the word "retroactive," the Plaintiffs have failed to prove that court's order was entered *nunc pro tunc,* rather than retroactively.

Under Rule 44.1, "[t]he court, in determining foreign law, may consider any relevant material or source.... The court's determination shall be treated as a ruling on a question of law."

The Plaintiffs have submitted evidence of C.A.R. law. The President of the Court of Appeal stated by letter that the legal effect of its decision was that Allen was Mad–Bondo's mother from 1987, prior to her sixteenth birthday, onward. That statement clarifies that the Bangui court's reference to retroactivity in its ruling is meant to have the effect of replacing Allen's 1987 Tutelage Ordinance with an entry of Plenary Adoption. (Summ. J. Mot., Ex. E.) The President's statement is buttressed by the affidavit of Cyrus Mad–Bondo, Mad–Bondo's husband. He declares that he was trained in C.A.R. law, that he worked with the French Civil Code (which is the basis of C.A.R. law) for three years, and that based on his personal knowledge of the C.A.R.'s law, the Bangui court's ruling was meant to change the prior entry and make Allen Mad–Bondo's mother from 1987 onward. (Summ. J. Mot., Ex. D ¶¶ 3, 4, 5, 12.) While the court would not rely solely on the statement of Mad–Bondo's husband to determine C.A.R. law, the court does consider it herein in conjunction with the Plaintiff's other evidence of C.A.R. law. The INS has submitted no evidence of C.A.R. law.

After thorough review, the court finds that under the C.A.R.'s law, Mad–Bondo was the legal adoptive daughter of Allen prior to her sixteenth birthday. Unlike in *Cariaga,* wherein the court did not purport to enter its judgment *nunc pro tunc,* the Bangui court considered an adoption application filed before the child's sixteenth birthday and found an adoption should have been entered at that time. The use of the word "retroactive" in the clarifying letter by the President of the Bangui Court of Appeal must be read in the context of the entire letter. Read in this manner, the use of the word retroactive is not meant to have the same meaning that retroactive is given in the *Cariaga* case. It is meant to have the effect of being a *nunc pro tunc* order. It is not simply meant to relate back to a prior date but have the effect of actually being entered on that prior date. The President's letter says, "[f]rom that day of March 2, 1987, the Appellant Miss Mae Mary Allen became legally the adoptive mother of [Mad–Bondo]." (Summ. J. Mot., Ex. E.) That explanation, together with the affidavit of Cyrus Mad–Bondo, demonstrates that the order was to have a *nunc pro tunc* effect. Accordingly, this court determines, pursuant to Rule 44.1, that the Bangui

court's decision had the effect of a *nunc pro tunc* order.

To the extent the INS held the Bangui court's decision had retroactive effect as opposed to being entered *nunc pro tunc*, that decision was based on an improper understanding of the law. Given the INS' statement that it would accept a *nunc pro tunc* order as evidence of proper adoption, this court holds Mad–Bondo should be accorded "immediate relative" status for immigration purposes. The court, therefore, grants the Plaintiffs' motion for summary judgment and denies the Defendants' motion to dismiss for failure to state a claim.

IT IS SO ORDERED.

## JUDGMENT ENTRY

The court, having granted Plaintiffs' summary judgment motion and denied Defendants' motion to dismiss in a separate Order, hereby enters judgment for Plaintiffs and against Defendants.

IT IS SO ORDERED.