Rocio Delores GONZALEZ–MARTINEZ and Lyle Geral Dahlberg, Plaintiffs,

v.

DEPARTMENT OF HOMELAND SECURITY, et al., Defendants.

No. 2:08–cv–0800 BSJ.

United States District Court,
D. Utah,
Central Division.

Sept. 1, 2009.

A. Jason Velez, Robert J. DeBry & Associates, St. George, UT, for Plaintiff.

Brett L. Tolman, Stephen J. Sorenson, Assistant United States Attorney, United States Attorney, Salt Lake City, UT, for Defendants.

## ORDER

BRUCE S. JENKINS, Senior District Judge.

Plaintiffs, pursuant to § 10(a) of the Administrative Procedure Act, 5 U.S.C. § 702 *et seq.*, seeks to review and reverse a decision of the U.S. Citizenship and Immigration Service refusing to classify Rocio Gonzalez–Martinez as an immediate relative (child) under § 201(b)(2)(A)(I) of the Immigration and Naturalization Act, 8 U.S.C. §§ 1101 *et seq.* Such was affirmed on review by the Board of Immigration Appeals on March 28, 2008.

The matter was argued to the court on April 16, 2009, and reserved by the court.

Appearances were as follows: A. Jason Velez appeared on behalf of Plaintiffs and Stephen J. Sorenson appeared on behalf of the United States.

The following facts are found in the record and are undisputed:

1. Plaintiff Rocio Delores Gonzalez–Martinez was born in Naco, Sonora, Mexico, on September 18, 1986. (R. 23–24, 123–24; Compl. exh. A.)

2. Rocio's 17–year–old mother's economic situation was not good, and she decided to give Rocio to her aunt, Maria (now Maria Delores Dahlberg) to raise. (R. 32–33; Compl. exh. B.) Maria and her then-husband, Alfredo Gonzalez Gallego, filed a birth certificate with the Sonora Civil Registry, listing Rocio as their daughter. (R. 23–25, 121, 123–24; Compl. exh. A.) Maria and Alfredo were subsequently divorced, and Rocio remained with Maria.

3. Maria married Plaintiff Lyle Dahlberg on April 12, 1998, in Santa Clara, Utah. (R. 160, 162; Compl. exh. C.)

4. Dahlberg petitioned for appointment as Rocio's guardian, and was granted guardianship by action of the Fifth District Court of Washington County, Utah, on March 9, 2000. (R. 29–31, 74; Compl. exh. D.)

5. Rocio turned 16 on September 18, 2002.

6. On April 19, 2004, Dahlberg submitted a Petition for Alien Relative (Form I–130), seeking to have Rocio designated as the immediate relative child of a U.S. citizen. In response, a CIS officer interviewed Maria and Dahlberg on July 18, 2005. (R. 153–54; Compl. exh. E at 2.)

7. During the interview, Maria "admitted Rocio was not her biological daughter. Maria stated Rocio is her niece, the daughter of Maria's sister. . . . Maria stated that she took the child (Rocio) and registered her as her biological daughter with the local authorities. Maria stated she never filed any paperwork with the courts and had never attempted to legally adopt Rocio." (R. 121; Compl. exh. E at 2.)

8. The petition was denied by CIS because Dahlberg failed to submit an adoption decree, and without such decree, Rocio did not qualify as his child under § 101(b)(1)(E) of the Immigration and Nationality Act, 8 U.S.C. § 1101(b)(1)(E)(i). (R. 113–14; Compl. exh. E at 2.)

9. Rocio subsequently filed an application for status as a permanent resident (Form I–291), but this was denied by the CIS District Director on October 28, 2005, because one claiming immediate relative status is not eligible for permanent residency unless she was the beneficiary of a valid visa petition; and Rocio's visa petition (Form I–130) had recently been denied. (R. 112; Compl. exh. E at 1.)

10. Removal proceedings were initiated as to Rocio on November 4, 2005. (R. 8–9, 18; Compl. exh. G at 2.)

11. On December 20, 2006, responding to Dahlberg's Petition for Adoption, State

District Judge G. Rand Beacham entered a Decree of Adoption, awarding Dahlberg rights as Rocio's adoptive father. (R. 21–22; Compl. exh. F.) The decree stated, "The adoption of the child is hereby retroactively dated to indicate that the Petitioner has legally adopted the child since *April 13, 1998.*" (R. 22 ¶ F; Compl. exh. F at 2 ¶ F.) Above his signature block, Judge Beacham entered:

DATED IN OPEN DAY IN [sic] COURT THIS:

20 DAY of Dec., 2006, *nunc pro tunc* to *April 13, 1998*

(R. 22; Compl. exh. F at 2.)

12. Dahlberg submitted a second Petition for Alien Relative (Form I–130) on January 3, 2007, with the adoption decree. (R. 14–15; Compl. exh. G at 2.) The written decision by the CIS Field Office Director was filed on March 29, 2007. The decision noted that Rocio reached age 16 on September 18, 2002 (more than four years before the granting of her legal adoption); and cited *Matter of Cariaga,* 15 I. & N. Dec. 716 (BIA 1976): "Where the adoption did not take place until the beneficiary reached [age 19 in that case], the adoption was not valid for immigration purposes notwithstanding the retroactive effect given the adoption decree by the issuing court, and the visa petition to accord the beneficiary immediate relative classification was denied." The Field Director's decision continued:

Rocio Delores Gonzalez–Martinez was over the age of sixteen when the adoption took place, therefore an adopted child relationship does not exist to qualify her as your adopted child for immigration purposes. Further, the sequence of events suggest that the nunc pro tunc may have been sought solely for the purpose of qualifying Rocio for immigration benefits. Accordingly your petition for Rocio Delores Gonzalez–

Martinez to qualify her as your adopted child is denied.

(R. 4–5; Compl. Exh. G at 2.)

13. On April 17, 2007, Dahlberg filed a Notice of Appeal to the Board of Immigration Appeals (Form EOIR–29) (R. 1; copy attached to Memorandum in Support of Defendants' Motion to Dismiss in Case No. 2:07cv0246), (dkt.No.6). He also filed an APA action, asking this Court to reverse the decision (*Gonzalez–Martinez v. Dep't of Homeland Security,* Case No. 2:07cv0246 PGC.) The Court dismissed the action for failure to present reviewable "final agency action" under the APA. (*Id.,* dkt. No. 9.)

14. On March 28, 2008, the Board of Immigration Appeals issued its decision:

PER CURIAM. The petitioner has appealed from the decision of the Field Office Director dated March 29, 2007, denying the visa petition that was submitted on behalf of the beneficiary, the petitioner's adopted child. Under the laws of the United States, the definition of the term "child" in section 101(b)(1)(E) of the Immigration and Nationality Act, 8 U.S.C. § 1101(b)(1)(E), includes an adopted child only if, among other requirements, the child was "adopted while under the age of sixteen years."

The petitioner has submitted an adoption decree that indicates that the adoption will be given retroactive effect to a date prior to the beneficiary's sixteenth birthday. However, the immigration laws relating to adoption do not generally recognize retroactive adoption dates. *See Matter of Cariaga,* 15 I. & N. Dec. 716 (BIA 1976). We do not find the present case to be factually distinguishable from *Matter of Cariaga, supra.* See also *Matter of Drigo,* 18 I. & N. Dec. 223 (BIA 1982).

We are sympathetic to the circumstances raised in this case. However, as the record reflects that the beneficiary had already reached the age of sixteen at the time of the adoption, the appeal from the denial of the visa petition must be dismissed.

As noted above, Maria Delores and Lyle Dahlberg were married April 12, 1998. Rocio has lived with Maria since birth. Maria is not Rocio's biological mother. The natural mother was Maria's niece. Rocio was listed on her Mexican birth certificate as Maria's child. Maria, Lyle and Rocio have lived as a family since at least the date of Maria and Lyle's marriage. At that time, Rocio was 11 years old.

The simple question is whether the United States is *required* to give credence, sometimes called full faith and credit, to a *nunc pro tunc* state adoption decree.

The simple answer of course is not always, but sometimes, to effect the purposes of the relevant federal statutes.

The United States relies on *Cariaga*, a Board of Immigration appeals case decided in 1976, which states in part:

> The issue raised is whether the retroactive effect which the Iowa Court has given the adoption should be considered by this Board in applying the provisions of the Immigration and Nationality Act. The legislative history of the Immigration and Nationality Act of 1952 clearly indicates that the Congress was concerned with the problem of keeping the families of immigrants united. As part of that policy, Congress provided liberal treatment of children. Despite this concern, Congress did not extend immigration benefits to adopted children for fear that fraudulent adoptions would provide a means of evading the quota restrictions. See S. Rept. 1515, 81st Cong., 2d Sess. 468. In 1957, however,

Congress included within the definition of "child", "one adopted while under the age of fourteen if the child has thereafter been in the legal custody of, and has resided with, the adopting parent or parents for at least two years ..." See Immigration and Nationality Act of September 11, 1957 (71 Stat. 639). Through the imposition of an age restriction on the creation of the adoptive relationship, Congress has attempted to distinguish between bona fide adoptions, in which a child has been made a part of a family unit, and spurious adoptions, effected in order to circumvent statutory restrictions. [FN 1]

> In light of the history behind the age restriction in section 101(b)(1)(E), it appears clear that the provision should be given a literal interpretation. The act of adoption must occur before the child attains the age of fourteen. Therefore, despite the retroactive effect given the beneficiary's adoption by the Iowa Court, an adoptive relationship was not created within the meaning of the Immigration and Nationality Act, when the beneficiary was adopted under Iowa law at age nineteen.

> We are aware of the sympathetic aspects of this case. However, the provisions of the Act do not permit recognition of this adoption for immigration purposes. The petition must be denied.

> ORDER: The appeal is dismissed.

The *Cariaga* case, if applied as a "literal" black-and-white rule, is entirely too restrictive. It gives no deference to the last paragraph of 28 U.S.C. § 1738, which states:

> The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.

The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

*Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.* (Emphasis added.)

The C.I.S., as an agency of the United States and through it the Board of Immigration Appeals, engaging in quasi-judicial proceedings, are not free to ignore the provisions of 28 U.S.C. § 1738. It seems to the court that the quasi-judicial effort needs to reconcile the two provisions of federal law, namely the Immigration and Naturalization Act and the statutory full faith and credit provision.

The decision of the Board in this case fails to give recognition to the overriding purpose of Congress in the immigration statutes to keep families "united," and places undue emphasis on the "fear that fraudulent adoptions would provide a means of evading the quota restrictions"— thus sweeping aside meritorious, non-fraudulent, *nunc pro tunc* orders which formalizes as of a given date a socially-recognized bona fide family relationship. The decision also pays no deference to the policy of § 1738, favoring the recognition of state court proceedings in the federal system.

There is not a hint of fraud in the petition in this case for an entry of a *nunc pro tunc* order of adoption. It is a non-fraudulent, legitimate state court order that simply formalizes and recognizes the existence in fact of a bona fide family unit, long-observed, in the family and in the community.

Ordering a child, even though now mature, legally adopted and acculturated in the United States, to be deported from the United States is far too Draconian an outcome, and in the opinion of the court, contrary to what Congress intended with respect to both children and proceedings in state court.

Each "adopted" Petitioner should be considered not as subject to a blanket rule, but on an individual basis, with emphasis, it seems to me on the professed policy of Congress of keeping families together when families actually exist.

■ The answer must be that when there is a valid decree, a non-fraudulent, non-spurious decree entered by a state tribunal, as to what in fact existed at a prior date, then its finding, its determination, should be given the credence demanded by the full faith and credit statute. In that instance, full faith and credit should be applied and the valid non-fraudulent state determinations should be accepted. Not every decree deserves acceptance, but each should be examined on its merits, and not be mechanically discarded. Not all cases are identical. Similar is not identical. A black-and-white rule is unfair to those who have a meritorious argument.

Such a practice may have ease of application, but ease of application is no substitute for thought. A machine can do as well, but due process requires more.

■ The test for acceptance of a *nunc pro tunc* adoption decree in a federal proceeding is the state test for acceptance.

That becomes the federal test for acceptance. That is what § 1738 says.

 The test here is whether Utah would give effect to the decree of adoption. The answer, of course, is yes; and would the state accept the "as of" date, the so-called *nunc pro tunc* date, and the answer of course is yes. In this instance, the order "simply adjudicated a prior judicial fact or status," establishing that a bona fide parent-child relationship existed prior to the entry of the order. Cf. *Whyte v. Blair,* 885 P.2d 791, 793 (Utah 1994). That relationship existed in fact, as of the so-called *"nunc pro tunc"* date. Indeed, as an adjudication of a relationship already existing in fact, it may not be a true *"nunc pro tunc"* order. No one disputes that the petitioners lived as parent and child at all times relevant to this proceeding. Rocio is adopted formally from that date. At that time she was eleven years old and well within the category of the federal immigration statute. Thus, the agency should do no less; it should accept that date, and in doing so, it would then meet the twin purposes of the statute, namely to preclude fraud and more importantly to keep families together. To do otherwise elevates one purpose over the other, and thus does not follow the mandate of Congress to consider both, and it ignores the full faith and credit statute. The action is thus "arbitrary and capricious" and contrary to law, 5 U.S.C. § 706(2)(A).

The Board's decision is REVERSED. The matter is REMANDED to the Board of Immigration Appeals so that it in turn may remand the same to the C.I. S. field office with direction to give deference to the state determination as to the effective date of adoption and classify Rocio as an immediate alien relative and issue an appropriate visa.

SO ORDERED.

Let Judgment by entered accordingly.