**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DORIS AMPONSAH, *Petitioner,* <br><br> v. <br><br> ERIC H. HOLDER, JR., Attorney General, *Respondent.* | No. 11-71311 <br><br> Agency No. A079-811-066 <br><br><br> OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 7, 2012—Seattle, Washington

Filed March 22, 2013

Before: William A. Fletcher and Raymond C. Fisher,
Circuit Judges, and Gordon J. Quist, District Judge.[*]

Opinion by Judge Fisher

---

[*] The Honorable Gordon J. Quist, Senior United States District Judge for the Western District of Michigan, sitting by designation.

## SUMMARY[**]

### Immigration

The panel granted Doris Amponsah Apori's petition for review of the Board of Immigration Appeals' decision holding that she did not satisfy the definition of "child" under 8 U.S.C. § 1101(b)(1)(E) for the purposes of adjustment of status, because she was not adopted before her 16th birthday.

The panel held under *Chevron* that the BIA's blanket rule against recognizing states' nunc pro tunc adoption decrees was an unreasonable and impermissible construction of § 1101(b)(1), and that case-by-case consideration of such adoption decrees is required. The panel also held that the BIA's determination that Apori engaged in marriage fraud violated her due process rights.

### COUNSEL

Carol L. Edward (argued), Law Offices of Carol L. Edward & Associates, P.S., Seattle, Washington, for Petitioner.

Stuart F. Delery, Acting Assistant Attorney General, Civil Division, Douglas E. Ginsburg, Assistant Director, Office of Immigration Litigation, and Katherine A. Smith (argued), Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

FISHER, Circuit Judge:

Doris Amponsah Apori seeks review of the Board of Immigration Appeals' (BIA) decision upholding the immigration judge's pretermission of her adjustment of status application. The BIA pretermitted Apori's application on the ground that Apori did not satisfy the definition of "child" under 8 U.S.C. § 1101(b)(1)(E) because she was not adopted before her 16th birthday. The BIA applied its precedent imposing a blanket rule against giving effect to state court adoption decrees entered nunc pro tunc after a child turned 16. The BIA thus refused to give effect to a Washington state court judgment decreeing that Apori's adoption occurred before her 16th birthday. Apori petitioned for review.

We hold that the BIA's blanket rule against recognizing state courts' nunc pro tunc adoption decrees constitutes an impermissible construction of § 1101(b)(1)(E) under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). The BIA's interpretation is unreasonable because it gives little or no weight to the federal policy of keeping families together, fails to afford deference to valid state court judgments in an area of the law – domestic relations – that is primarily a matter of state concern and addresses the possibility of immigration fraud through a sweeping, blanket rule rather than considering the validity of nunc pro tunc adoption decrees on a case-by-case basis. We further hold that the BIA's determination that Apori engaged in marriage fraud violated her rights to due process of law. We therefore grant the petition for review.

**Background**

Apori, a native and citizen of Ghana, was born in March 1984.  She entered the United States as a visitor in July 1999, when she was 15 years old.  On July 28, 2000, the Pierce County, Washington, Superior Court issued a decree providing for Apori's adoption by her United States citizen aunt, Beatrice Apori.  Apori maintains, and the government does not dispute, that her adoptive mother initiated this adoption process before Apori turned 16.

In September 2000, Apori's adoptive mother filed an I-130 family visa petition on Apori's behalf.  Apori filed a corresponding I-485 application to adjust status.  The parties agree that the I-485 was denied in May 2001 and that there was no separate formal denial of the I-130.  Apori's adoptive mother filed a second I-130 petition in 2007, and Apori ultimately renewed her application for adjustment of status.

In October 2001, the Washington superior court issued an order modifying the July 2000 decree of adoption nunc pro tunc.  The court provided that "the Decree of Adoption herein is hereby modified, nunc pro tunc, in so far as the effective date of filing of the Decree of Adoption is hereby February 28, 2000, four days prior to the sixteenth birthday of the adoptee."

In May 2004, the Department of Homeland Security (DHS) initiated removal proceedings against Apori, charging her as removable under 8 U.S.C. § 1227(a)(1)(C)(i) for failing to comply with the conditions of her nonimmigrant status. Apori conceded that she was removable, but sought adjustment of status as the adopted child of a United States citizen.

In December 2008, the immigration judge (IJ) granted the government's motion to pretermit Apori's application for adjustment of status. Federal law provides for adjustment of status to legal permanent residence if "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a). The government argued that an immediate relative visa was not available to Apori because she was adopted after the age of 16 and, hence, did not meet the statutory definition of a child under § 1101(b)(1)(E). Section 1101(b) provides in relevant part:

> (1) The term "child" means an unmarried person under twenty-one years of age who is . . .

> (E)(i) a child *adopted while under the age of sixteen years* if the child has been in the legal custody of, and has resided with, the adopting parent or parents for at least two years or if the child has been battered or subject to extreme cruelty by the adopting parent or by a family member of the adopting parent residing in the same household: *Provided*, That no natural parent of any such adopted child shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter . . . .

8 U.S.C. § 1101(b) (first emphasis added); *see also* 8 C.F.R. § 204.2(d)(2)(vii).

The IJ declined to decide whether Apori was adopted before the age of 16. Instead, the IJ concluded that Apori could not satisfy the statutory definition of child because she did not show that she had "been in the legal custody of, and has resided with, the adopting parent . . . for at least two years." 8 U.S.C. § 1101(b)(1)(E). Apori appealed the IJ's decision, and the BIA, reviewing de novo, affirmed. The BIA did not decide the legal custody question, but agreed with the government that Apori could not satisfy the definition of child because she was not adopted before the age of 16:

> The Immigration Judge correctly pretermitted the respondent's application to adjust her status based on the absence of an immediately available visa. The visa petitions filed in 2000 and 2007 by the respondent's adoptive parent are presumptively not grantable because an adoption decree entered *nunc pro tunc* after the age of 16 is not given retroactive effect under the immigration laws. *See Matter of Cariaga*, 15 I&N Dec. 716 (BIA 1976).

(Citations omitted.)

Apori timely petitioned for review. She challenges the BIA's blanket rule against giving effect to state court adoption decrees entered nunc pro tunc after a child's 16th birthday. She also challenges the BIA's separate determination, discussed below, that she had engaged in marriage fraud.

**Standard of Review**

Where, as here, the BIA has conducted a de novo review of the IJ's decision, we review only the decision of the BIA. *See Hernandez v. Ashcroft*, 345 F.3d 824, 832 (9th Cir. 2003). The BIA's resolutions of questions of law are reviewed de novo. *See id.* Determinations of fact are reviewed for substantial evidence. *See id.*

**Discussion**

**I.**

The BIA held that Apori did not satisfy the statutory definition of child because she was adopted after her 16th birthday. In so holding, the BIA declined to give effect to the Washington state court's nunc pro tunc decree establishing Apori's adoption date as four days before she turned 16. The BIA cited its precedential decision adopting a blanket rule against recognizing nunc pro tunc adoption orders, *Matter of Cariaga*, 15 I. & N. Dec. 716 (BIA 1976). The government defends the BIA's blanket rule as a correct, or at least permissible, interpretation of § 1101(b)(1)(E). Apori argues that the statute must be understood to require the BIA to give effect to valid state adoption decrees, including nunc pro tunc decrees. She argues that the BIA must review those decrees on a case-by-case basis and give effect to them in the absence of fraud.

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), establishes a two-step framework for reviewing agency interpretations of statutes they administer. Under the first step, we determine "whether Congress has directly spoken to the precise question at issue.

If the intent of Congress is clear," then we "must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. Under step two, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. "If a statute is ambiguous, and if the implementing agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005).

## A. *Chevron* Step One

Section 1101(b) defines a child to include "a child *adopted while under the age of sixteen years* if the child has been in the legal custody of, and has resided with, the adopting parent or parents for at least two years." 8 U.S.C. § 1101(b)(1)(E)(i) (emphasis added). The government argues that this language unambiguously requires *the adoption decree to issue* before the child reaches age 16. The statute, however, says nothing about issuance of a decree. It speaks of adoption, which could refer to the date the adoption is effective under state law, as Apori asserts, or to the date the adoption process is concluded, as the government maintains. The statute is therefore ambiguous with respect to the specific issue presented. *See Mathews v. USCIS*, 458 F. App'x 831, 833 (11th Cir. 2012) (so holding); *Sook Young Hong v. Napolitano*, 772 F. Supp. 2d 1270, 1276 (D. Haw. 2011) (same). We thus proceed to *Chevron* step two.

## B. *Chevron* Step Two

At step two, the question is whether the BIA's interpretation of § 1101(b)(1)(E), imposing a blanket rule against recognition of nunc pro tunc adoption orders, is reasonable.

The BIA adopted its interpretation of § 1101(b)(1)(E) in *Matter of Cariaga*, 15 I. & N. Dec. 716, 717 (BIA 1976), and *Matter of Drigo*, 18 I. & N. Dec. 223, 224 (BIA 1982). These decisions, according to the BIA, establish the rule that "an adoption decree entered *nunc pro tunc* after the age of 16 is not given retroactive effect under the immigration laws."

In *Cariaga*, a United States citizen petitioner applied for immediate relative status for his adopted child. *See Cariaga*, 15 I. & N. Dec. at 716. The child came to the United States in 1958, when he was two years old. *See id.* In 1963, when the child was seven, the child's father executed an affidavit giving his consent to the adoption of the child by the petitioner and his wife, with whom the child had been living. *See id.* In 1975, when the child was 19, an Iowa court issued a decree of adoption, declaring the child adopted by the petitioner and his wife retroactive to April 8, 1963, the date of the father's affidavit. *See id.* at 717.

At the time, federal immigration law provided that the adoption had to occur before the child attained the age of 14, and the issue was "whether the retroactive effect which the Iowa Court has given the adoption should be considered by this Board in applying the provisions of the Immigration and Nationality Act." *Id.* The BIA, relying primarily on legislative history, cursorily determined that it should not be:

The legislative history of the Immigration and Nationality Act of 1952 clearly indicates that the Congress was concerned with the problem of keeping the families of immigrants united.  As part of that policy, Congress provided liberal treatment of children.  Despite this concern, Congress did not [initially] extend immigration benefits to adopted children for fear that fraudulent adoptions would provide a means of evading the quota restrictions.  See S. Rept. 1515, 81st Cong., 2d Sess. 468.  In 1957, however, Congress included within the definition of "child", "one adopted while under the age of fourteen if the child has thereafter been in the legal custody of, and has resided with, the adopting parent or parents for at least two years . . ."  See Immigration and Nationality Act of September 11, 1957 (71 Stat. 639).  Through the imposition of an age restriction on the creation of the adoptive relationship, Congress has attempted to distinguish between bona fide adoptions, in which a child has been made a part of a family unit, and spurious adoptions, effected in order to circumvent statutory restrictions.

In light of the history behind the age restriction in section 101(b)(1)(E), it appears clear that the provision should be given a literal interpretation.  The act of adoption must occur before the child attains the age of fourteen.  Therefore, despite the retroactive effect given the beneficiary's adoption by the

Iowa Court, an adoptive relationship was not created within the meaning of the Immigration and Nationality Act, when the beneficiary was adopted under Iowa law at age nineteen.

*Id.* (footnote omitted).

In *Drigo*, a lawful permanent resident petitioner applied for preference status for her adopted son. *See Drigo*, 18 I. & N. Dec. at 223. The Territorial Court of the Virgin Islands issued an adoption decree in October 1979, after the child's 14th birthday, but the decree was entered nunc pro tunc as of May 1979, before the child turned 14. *See id.* at 224. Following *Cariaga*, the BIA ruled that it "was Congress' intent that the age restriction in section 101(b)(1)(E) be construed strictly" and, thus, that the "act of adoption must have occurred before the child attained the age of 14." *Id.*[1]

The government argues that the BIA's interpretation is reasonable, and should be accorded *Chevron* deference, for essentially three reasons: (1) *Cariaga* was decided in 1976 and the BIA's interpretation is therefore longstanding, *see Barnhart v. Walton*, 535 U.S. 212, 220 (2002) (according "particular deference to an agency interpretation of 'longstanding' duration"); (2) the BIA's interpretation balances Congress' competing goals of keeping immigrant families together and discouraging fraudulent adoptions made only for the purpose of circumventing immigration laws; and (3) the BIA acted within its discretion by giving greater

---

[1] *See also* 8 C.F.R. § 204.2(d)(2)(vii)(C) ("To meet the definition of child contained in sections 101(b)(1)(E) and 101(b)(2) of the Act, the child must have been under 16 years of age when the adoption is finalized.").

weight to Congress' concern about preventing fraud than to its competing concern about keeping families together. The government argues that this weighing of priorities "is precisely the type of agency interpretation that . . . courts should refrain from second-guessing." We are not persuaded.

First, in the absence of a contrary intention expressed by Congress, any construction of the word "adopted" in § 1101(b)(1) must afford due deference to state law. As the Supreme Court explained in *De Sylva v. Ballentine*, 351 U.S. 570 (1956), "[t]he scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law." *Id.* at 580. "This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern." *Id.* "*To determine whether a child has been legally adopted, for example, requires a reference to state law*." *Id.* (emphasis added). The BIA's blanket rule disregards this principle: Apori was, as a matter of Washington law, adopted at the age of 15. It is true, of course, that federal immigration law "exists independent of state family law," *Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 400 (5th Cir. 2006), but "where the term in question involves a legal relationship that is created by state or foreign law, the court must begin its analysis by looking to that law," *Minasyan v. Gonzales*, 401 F.3d 1069, 1076 (9th Cir. 2005). The BIA's construction fails to recognize that "adopted" is a legal status defined by state law.

Second, the BIA's blanket rule affords no weight to the strong federal policy favoring federal recognition of valid state court judgments. This policy is exemplified by the Full Faith and Credit Act, which provides that the "records and

judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. The BIA's categorical rule pays no heed to this important federal policy.

Third, rather than addressing the possibility of fraud on an individual basis, the BIA's blanket rule conclusively lumps all nunc pro tunc decrees together as invalid. This rule presumes that every nunc pro tunc decree is spurious, thus sweeping aside meritorious, nonfraudulent, nunc pro tunc adoption decrees that recognize a bona fide family relationship that actually existed before the child turned 16. *See Gonzalez-Martinez v. DHS*, 677 F. Supp. 2d 1233, 1237 (D. Utah 2009). The BIA's conclusion that the age restriction in § 1101(b)(1)(E) must be "construed strictly," *Drigo*, 18 I. & N. Dec. at 224, is in tension with the acknowledged policy of "liberal treatment of children," *Cariaga*, 15 I. & N. Dec. at 717. The BIA refuses to acknowledge a nunc pro tunc adoption decree even when adoption papers are filed on time but adoption proceedings are delayed due to circumstances entirely beyond the parents' control.[2]

---

[2] In *Velazquez v. Holder*, No. C 09-01146 MEJ, 2009 WL 4723597, at *1 (N.D. Cal. Dec. 9, 2009), for example, the adoptive parents filed an adoption petition in July 2005. Because of a delay by the U.S. Department of Justice in returning the child's live scan results, the state court did not issue an adoption decree until April 2006, four months after the child's 16th birthday. *See id.* The senior adoption specialist from the California Department of Social Services asked the court issue a nunc pro tunc order to allow the adoption to be finalized before the child's birthday, and the court did so. *See id.* The United States Citizenship and Immigration Services found that the child did not qualify as a "child" because he was over the age of 16 when the adoption was finalized. *See*

    That some nunc pro tunc adoptions decrees may involve
fraud does not justify the BIA's *categorical* refusal to
recognize nunc pro tunc decrees issued after the age of 16.
We confronted a similar question in *Kaho v. Ilchert*, 765 F.2d
877 (9th Cir. 1985). In *Matter of Fakalata*, 18 I. & N. Dec.
213 (BIA 1982), the BIA had refused to recognize Tongan
customary adoptions – which are less formal than
conventional adoptions – under § 1101(b)(1)(E), justifying its
decision as "a necessary safeguard against the possibility of
fraud." *Id.* at 218. We rejected that reasoning, explaining:

> [The government]'s contention that the
> fluidity of Tongan customary adoptions would
> create an unacceptable potential for fraud and
> manipulation is unpersuasive. The INS is
> quite capable of ferreting out fraudulent
> claims. A petitioner seeking classification for
> a relative bears the burden of demonstrating
> that an adoption took place. The INS can ably
> scrutinize the evidence submitted in support
> of the petition and determine whether a *bona
> fide* customary adoption *in fact* occurred
> under the particular circumstances presented.
> Furthermore, the specific requirements of
> section 1101(b)(1)(E) minimize the possibility
> of fraud.

*Kaho*, 765 F.2d at 886.

---

*id.* Citing *Cariaga*, the agency stated that it did not consider the court's
nunc pro tunc order effective for immigration purposes. *See id.* The
district court ruled that the government's "disregard of the order was
arbitrary, capricious, an abuse of discretion, and not in accordance with
law." *Id.* at *7.

Here too, the BIA can address fraud by investigating individual cases, as it does when evaluating the possibility of marriage fraud. *See Sook Young Hong*, 772 F. Supp. 2d at 1280; *cf. Minasyan*, 401 F.3d at 1080 n.20 (distinguishing between nunc pro tunc divorce decrees that "would create a legal fiction and would not serve the purpose of the statute" and a nunc pro tunc decree that "acknowledged a separation that was actually in effect both in practice and as a matter of California law at the [relevant] time"). If the evidence shows that an adoption decree's effective date does not represent the legitimate date of the adoption, the BIA need not recognize it. Furthermore, as we emphasized in *Kaho*, the specific requirements of § 1101(b)(1)(E) – at least two years of legal custody pursuant to state law, with the child and the adoptive parent having resided together in a familial relationship – minimize the possibility of fraud. *See Kaho*, 765 F.2d at 886; *see also* 8 C.F.R. § 204.2(d)(2)(vii)(A)–(B). The BIA's strict construction of the age requirement is based on the notion that Congress drew a bright line using age to screen out fraud, but ignores the fact that Congress also included the two-year legal custody and residence requirements as an effective screen. In sum, although the BIA's blanket rule purports to balance Congress' liberal policy toward children and interest in maintaining family unity against its interest in preventing fraud, in fact it affords controlling weight to fraud prevention while disregarding the child and family unity.[3]

---

[3] We agree with the BIA that Congress intended § 1101(b)(1) to serve both of these interests. *See Matter of Yuen*, 14 I. & N. Dec. 71, 72 (BIA 1972) ("The definition of 'child' contained in section 101(b)(1) did not extend to an adopted child until section 101(b)(1)(E) was added by the Act of September 11, 1957 (71 Stat. 639). The amendment was designed to prevent hardship and to keep families together. At the same time Congress desired to prevent the recognition of ad hoc adoptions made only for the purpose of circumventing the immigration laws.").

We are not the only ones to have seen these flaws in the BIA's blanket rule. A number of district courts have rejected *Cariaga* as unreasonable at *Chevron* step two or as arbitrary or capricious under the Administrative Procedure Act (APA). *See Sook Young Hong*, 772 F. Supp. 2d at 1281 (*Chevron* step two); *Velazquez*, 2009 WL 4723597, at *7 (APA); *Gonzalez-Martinez*, 677 F. Supp. 2d at 1238 (same); *Messina v. USCIS*, No. Civ. A 05CV73409DT, 2006 WL 374564, at *6 (E.D. Mich. Feb. 16, 2006) (same); *see also Allen v. Brown*, 953 F. Supp. 199, 202–03 (N.D. Ohio 1997) (requiring the BIA to give effect to a nunc pro tunc adoption order). We find these decisions persuasive.

We recognize that the Eleventh Circuit recently accorded deference to *Cariaga* at *Chevron* step two. *See Mathews v. USCIS*, 458 F. App'x 831, 833 (11th Cir. 2012) (unpublished). *Mathews*, however, provides only a cursory analysis, and it does not cite *Sook Young Hong*, *Velazquez*, *Gonzalez-Martinez*, *Messina* or *Allen* or address any of the concerns raised in those decisions (or discussed by us here). *Mathews*, therefore, is not persuasive authority.

We hold that the BIA's blanket rule against recognizing nunc pro tunc adoption decrees constitutes an impermissible construction of § 1101(b)(1) and that case-by-case

---

When Congress amended § 1101(b)(1) in 1981, *see* Pub. L. No. 97-116, § 2(b), 95 Stat. 1611 (1981) (raising the adoption age limit from 14 to 16), it appears to have been concerned primarily with family unity rather than spurious adoptions. *See* H.R. Rep. No. 97-264, at 19 (1981), *reprinted in* 1981 U.S.C.C.A.N. 2577, 2588 (providing that the amendment "will alleviate hardship for many U.S. citizen adoptive parents"). The legislative history of the 1981 bill does not reflect congressional awareness, approval or disapproval of the BIA's decision in *Cariaga* five years earlier.

consideration of nunc pro tunc adoption decrees is required. Accordingly, we grant the petition and remand for further proceedings.[4]

## II.

The BIA gave a second reason for pretermitting Apori's adjustment of status application – Apori's participation in a fraudulent marriage. *See* 8 U.S.C. § 1154(c) (providing that no visa petition shall be approved if "the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the

---

[4] After this case was argued, we decided *United States v. Yepez*, — F.3d —, 2012 WL 6621346 (9th Cir. Dec. 20, 2012) (en banc). There, we declined to give effect to state court orders terminating the defendants' probation nunc pro tunc to dates before the defendants committed their federal offenses. We held that U.S. Sentencing Guidelines Manual § 4A1.1(d), which provides for an additional two criminal history points "if the defendant committed the instant offense while under any criminal justice sentence, including probation," "looks to a defendant's status at the time he commits the federal crime," and explained that a state court could not "alter the historical fact that the defendant had the status of probationer when he committed his federal crime." *Id.* at *1. The same reasoning applies here. When applying § 1101(b) to a nunc pro tunc adoption decree, the BIA must distinguish between a bona fide parent-child adoptive relationship that actually existed as a matter of historical fact, and which has been validated as such by the state court, and a decree that creates an historical fiction. *Cf. Minasyan*, 401 F.3d at 1080 n.20 (distinguishing between nunc pro tunc divorce decrees that "would create a legal fiction" and a nunc pro tunc decree that "acknowledged a separation that was actually in effect both in practice and as a matter of California law at the [relevant] time"). This inquiry focuses on whether an adoptive relationship existed as a matter of fact and state law at the relevant time; the BIA's rule, by contrast, focuses on the amount of time it took the state court to approve the adoption application – an irrelevant consideration.

immigration laws"). We cannot sustain the BIA's decision on this basis, however, because the agency's actions violated Apori's due process rights.

Apori married in 2002. In 2005, Apori's U.S. citizen husband filed an I-130 spousal visa petition on Apori's behalf. In 2007, the United States Citizenship and Immigration Services denied that petition, finding that Apori had entered into "a sham marriage to obtain immigration benefits." The BIA affirmed in March 2008, and Apori's husband did not seek judicial review.

The marriage fraud issue, however, was not litigated in the removal proceedings giving rise to this appeal. In the immigration court, the government neither raised the question of marriage fraud nor asserted § 1154(c) as a basis for pretermitting Apori's adjustment of status application, and the immigration judge made no finding that Apori's marriage was fraudulent. On appeal, however, the BIA took administrative notice of the March 2008 decision and invoked the § 1154(c) marriage bar as an alternative ground for pretermitting Apori's application:

> Even if the respondent were eligible as an adopted child, she is subject to the provisions of section 204(c) of the Act, 8 U.S.C. § 1154(c), barring the approval of a visa petition on behalf of a beneficiary who has engaged in a fraudulent marriage. It is not disputed that the spousal visa petition filed on behalf of the respondent was denied on grounds of a sham marriage, and this determination was affirmed by the Board on March 11, 2008. The respondent has

presented no evidence or persuasive argument
that she would be able to establish that her
marriage was not entered into for the purpose
of evading the immigration laws.

Apori complains that the BIA's fraudulent marriage
finding violates due process because (1) she did not have a
reasonable opportunity to present evidence on the issue in the
immigration court and (2) the BIA took administrative notice
of the March 2008 decision without affording her notice or an
opportunity to be heard. We agree.

First, Apori did not have a reasonable opportunity to
present evidence on the marriage fraud issue in the
immigration court because the issue was not raised there.
The BIA's reliance on § 1154(c) thus violated Apori's due
process rights. *See Colmenar v. INS*, 210 F.3d 967, 971 (9th
Cir. 2000) ("[A]n alien who faces deportation is entitled to a
full and fair hearing of his claims and a reasonable
opportunity to present evidence on his behalf."). The
government's argument that the marriage fraud question *was*
raised in the immigration court proceedings is simply not
supported by the record.

Second, Apori's rights were violated when the BIA took
administrative notice of the March 2008 finding without
affording Apori notice and an opportunity to contest it. When
taking administrative notice of controversial or individualized
facts, the BIA must provide an alien with notice and an
opportunity to rebut them. *See Circu v. Gonzales*, 450 F.3d
990, 993 (9th Cir. 2006) (en banc); *Castillo-Villagra v. INS*,

972 F.2d 1017, 1028 (9th Cir. 1992).  The BIA failed to do so
here.**5**

     To reverse a BIA decision on due process grounds, the
petitioner must also demonstrate prejudice, "which means
that the outcome of the proceeding may have been affected by
the alleged violation." *Ibarra-Flores v. Gonzales*, 439 F.3d
614, 620–21 (9th Cir. 2006) (quoting *Colmenar*, 210 F.3d at
971) (internal quotation marks omitted).  Apori has shown
prejudice here.  She argues that, if she had received notice of
the fraudulent marriage issue, she would have presented
evidence from her husband, her in-laws and her adoptive
mother showing that her marriage was not a fraud.  This
showing is sufficient to establish prejudice.  *See Zolotukhin
v. Gonzales*, 417 F.3d 1073, 1077 (9th Cir. 2005) (explaining
that we may "infer prejudice even absent any allegations as
to what the petitioner or his witnesses might have said").

     The government argues that it does not matter whether
Apori was denied a full and fair opportunity to litigate the
marriage fraud issue in her removal proceedings because she
is bound by the finding of fraud in her husband's visa petition
case.   Neither the IJ nor the BIA, however, mentioned

---

     **5** The BIA also appears to have exceeded the permissible scope of
administrative notice.  A court in one case may not take judicial notice of
the *truth* of judicial findings of fact in another case. *See Wyatt v. Terhune*,
315 F.3d 1108, 1114 n.5 (9th Cir. 2003); 21B Charles Alan Wright et al.,
*Federal Practice and Procedure* § 5106.4 (2d ed. 2012).  Thus, although
the BIA could take administrative notice of the *contents* of its March 2008
decision, it could not take administrative notice of the *truth* of the findings
in the March 2008 decision – i.e., that Apori's marriage was a fraud. *See*
8 C.F.R. § 1003.1(d)(3)(iv) (providing that the BIA may take
"administrative notice of commonly known facts such as current events
or the *contents* of official documents" (emphasis added)).

collateral estoppel or res judicata, and neither tribunal gave preclusive effect to the March 2008 decision. Thus, even if those doctrines could apply here (a question we do not reach), we will not apply them for the first time on appeal. *See Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004) (per curiam) ("In reviewing the decision of the BIA, we consider only the grounds relied upon by that agency. If we conclude that the BIA's decision cannot be sustained upon its reasoning, we must remand to allow the agency to decide any issues remaining in the case.").

## III.

Apori's remaining contentions are premature or without merit. Apori's argument that the BIA violates equal protection by refusing to give effect to nunc pro tunc adoption decrees while accepting nunc pro tunc principles in other contexts is unexhausted. We therefore lack jurisdiction to consider the argument. *See Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004). Apori's argument that the immigration court wrongly denied her request for a continuance is vague and conclusory. She therefore has not shown an abuse of discretion. *See An Na Peng v. Holder*, 673 F.3d 1248, 1253 (9th Cir. 2012). Finally, we do not address Apori's argument that the IJ erred by ruling that Apori did not satisfy § 1101(b)'s two-year legal custody requirement. The BIA's decision did not rest on that ground, so the IJ's ruling on that issue is not before us. *See Hernandez v. Ashcroft*, 345 F.3d 824, 832 (9th Cir. 2003) ("Where as here, the BIA has conducted a *de novo* review of the IJ's decision, we review only the decision of the BIA.").

## Conclusion

We conclude that neither of the bases the BIA gave for pretermitting Apori's adjustment of status application can be sustained. The BIA's determination that Apori does not meet the statutory definition of child was based on a blanket rule against the recognition of nunc pro tunc adoption decrees that constitutes an impermissible construction of the statute. The BIA's determination that Apori is ineligible for relief on account of marriage fraud overlooked the due process requirements recognized in our case law. We therefore grant the petition for review and remand to the BIA for further proceedings.[6]

**PETITION GRANTED.**

---

[6] In a letter to the court filed two days before oral argument, the government advised us that Apori's adoptive mother's visa petition was denied by the BIA and asserted that the denial of the petition mooted this case. We do not agree. First, the BIA did not identify an approved visa petition as a prerequisite to its decision. Second, the government has not provided any controlling authority for the proposition that an applicant for adjustment of status is required to show an approved visa petition. *See Hernandez*, 345 F.3d at 842. Third, the BIA denied the petition in question on the very basis Apori successfully challenges in this appeal – the BIA's categorical refusal to recognize nunc pro tunc adoption decrees issued after the child reaches the age of 16. *See In re Doris Amponsah Apori-Ward*, No. A079 811 066 (BIA Feb. 9, 2012). The government therefore has not met its heavy burden of establishing mootness. *See Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (en banc).